## LOGAN v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

### Division Two, July 2, 1904.

1. **EVIDENCE: Admission: Stricken Out.** Whatever error the court commits in admitting evidence and overruling a motion to strike it out, is corrected by subsequently striking it out and directing the jury to disregard it.

2. ———: ———: **Without Objection.** The admission without objection of evidence immaterial to the issues is not error.

3. ———: ———: **Condition of Track.** A draft or plat showing the condition of the track made eight days after the accident occurred is not inadmissible if there was evidence that the track was in the same condition at that time that it was at the time of the accident.

4. ———: ———: **In Rebuttal.** The admission of evidence in rebuttal that should have been introduced in chief is within the discretion of the court, and, in the absence of a showing of an abuse of that discretion, is not error.

5.  **NEGLIGENCE: Carrier: Prima Facie Case for Passenger.** A passenger for hire upon a street car makes out a prima facie case of his right to recover for injuries received by him by showing that the car was derailed and that by reason thereof he was injured. In order to overcome this prima facie case it devolves on the carrier to explain the derailment in some way not inconsistent with its duty to the passenger. And an instruction which so states plaintiff's right to recover is not error.

6.  **INSTRUCTIONS: Broader than Issues: Cured by Defendant's.** Instructions should never be broader than the issues. Where they charge plaintiff's injuries to the derailment of a street car, they should confine a reference to the condition of the track to its condition at the point of the accident, and not to its condition generally, and if it may be fairly inferred from those given for plaintiff that they were intended to apply only to the condition of the track at the point of the accident, and those given for defendant dispel all doubt about the matter, there is no reversible error.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover,* Judge.

AFFIRMED.

*John H. Lucas* for appellant.

(1)  The court erred in admitting incompetent evidence on the part of plaintiff and in refusing to admit competent evidence on the part of defendant. (a) Hows cars passed over the switch coming from the Southwest boulevard. (Atley.) (b) As to condition after the accident. (Logan.) (c) Brightwell not in rebuttal. Bank v. Bank, 64 Mo. App. 253; Goble v. Kansas City, 148 Mo. 470; Culbertson v. Railroad, 140 Mo. 35; Day v. Railroad, 81 Mo. App. 471; Hansberger v. Railroad, 82 Mo. App. 566; Feary v. Railroad, 162 Mo. 75; Alcorn v. Railroad, 108 Mo. 901; Hipsley v. Railroad, 88 Mo. 354; Mahoney v. Railroad, 108 Mo. 200. (2) Manifest error was committed in giving instructions requested by plaintiff and refusing those asked by defendant. (a) Instruction 3 asked by the

plaintiff. It is unsupported by the evidence, enlarges the issues, and is misleading, calculated to mislead and confuse the jury, not to assist them in the proper determination of the issues involved in the controversy. Bailey v. Railroad, 152 Mo. 449; Feary v. Railroad, 162 Mo. 101; Drumm-Flato v. Bank, 92 Mo. App. 333; Fitzgerald v. Hayward, 50 Mo. 516; Sawyer v. Railroad, 37 Mo. 240; Donohue v. Railroad, 83 Mo. 560; Greer v. Parker, 85 Mo. 107. (b) Instruction 4 asked by plaintiff. It charges the defendant with a degree of care not required by law, enlarges the issues between plaintiff and defendant, and is erroneous and misleading, and submits questions concerning which there is no evidence, and conflicts with those given for the defendant. In addition to all this it requires defendant to prove on its part a high degree of care in matters that in no wise contributed to the injury. Booth, Street Railways (1 Ed.), sec. 361; Clark v. Railroad, 127 Mo. 210; 2 Fetter, Carrier Passengers, sec. 480; Spencer v. Railroad, 17 Am. and Eng. R. R. Cas. (N. S.) 116; Railroad v. Burrow, 17 Am. and Eng. R. R. Cas. (N. S.) 683; Nellis, Surface Railroads, pp. 518-19; Hastings v. Railroad, 40 N. Y. Supp. 93; Hite v. Railroad, 130 Mo. 138; Feary v. Railroad, 162 Mo. 75; Waddingham v. Hulett, 92 Mo. 528; Barr v. Kansas City, 105 Mo. 560; Duke v. Railroad, 99 Mo. 351; Sawyer v. Railroad, 37 Mo. 257. (c) Instructions numbered 1 and 3 asked by the defendant and refused. There was no evidence on which to base a recovery and the court should have so instructed the jury. Nellis, Surface Railroads, p. 519; Hipsley v. Railroad, 88 Mo. 353; Hite v. Railroad, 130 Mo. 138; 2 Am. and Eng. Ency. Law (1 Ed.), 746; Powell v. Railroad, 76 Mo. 80. (d) Instruction 4 asked by the defendant and refused, ought to have been given. Surely it was proper for the jury to be instructed in what manner they might regard the evidence of the plaintiff. Feary v. Railroad, 162 Mo. 75; Erwin v. Railroad, 94 Mo. App. 297; O'Neill v. Blase,

94 Mo. App. 665; Holmes v. Leadbetter, 95 Mo. App. 425. (3) The court erred in overruling the motion for a new trial. Error was committed in refusing to sustain the demurrer to the evidence, in admitting and refusing to admit evidence, in giving and refusing instructions, and for the reason that the verdict should have been for the defendant, and not for the plaintiff. Authorities cited supra; Nellis, Surface Railroads, p. 519; Hipsley v. Railroad, 88 Mo. 353; Hite v. Railroad, 130 Mo. 138; Whitsett v. Ransom, 79 Mo. 260; Spohn v. Railroad, 87 Mo. 84; Garrrett v. Greenwell, 92 Mo. 125; Caruth v. Richardson, 96 Mo. 192; State v. Primm, 98 Mo. 373; State ex rel. v. Guinotte, 156 Mo. 521; May v. Crawford, 150 Mo. 521; Oglesby v. Railroad, 150 Mo. 224.

*Cook & Gossett* and *W. Wallace Greene* for respondent.

(1) (a) The testimony of the witness, Atley, as to the practice of defendant's employees in ''jumping'' and prying its cars over the point in the track or switch where the derailment occurred was withdrawn by the court from consideration by the jury, but this testimony was eminently proper as tending to show a bad condition of the track, including the switch. It could be so withdrawn. Winters v. Railroad, 39 Mo. 475; Stephens v. Railroad, 96 Mo. 207; Wright v. Gillespie, 43 Mo. App. 244; Anderson v. Railroad, 161 Mo. 420, approving Stephens v. Railroad, supra. The testimony was proper. Stoher v. Railroad, 105 Mo. 192; Railroad v. Putnam, 118 U. S. 545 (30 L. Ed. 257); Guttridge v. Railroad, 105 Mo. 527; Swadley v. Railroad, 118 Mo. 268. (b) The testimony of Logan, in describing the switch as it was on October 14, one week after the accident, was perfectly competent, especially in view of the testimony of defendant's witness, Simmons, to the effect that the switch was the same as it was on October 6, the date of the occurrence, and the testimony of other

witnesses to the same effect.   His testimony was not an
opinion.   Rose v. City, 152 Mo. 602; Guttridge v. Rail-
road, 105 Mo. 527; Swadley v. Railroad, 118 Mo. 273;
State v. Buchler, 103 Mo. 207; State v. Robinson, 117
Mo. 649.   (c)   The testimony of Brightwell was proper
in rebuttal.   It tended to contradict affirmative propo-
sitions of defendant's witnesses, and, at all events, was
admissible in the reasonable discretion of the court.
Defendant did not ask a continuance or claim a sur-
prise.   Bailey v. Chapman, 41 Mo. 536; Burns v.
Whelan, 52 Mo. 520; State v. Murphy, 118 Mo. 15; State
v. Buchler, 103 Mo. 208; Jackson v. Railroad, 118 Mo.
199.   (2) (a) Plaintiff's instruction 3 is strictly in ac-
cordance with the pleading and with the evidence and
the law.   The derailment of the car made out a prima
facie case, but the jury were told not to find for the
plaintiff if they found the defendant was not guilty of
carelessness and negligence or that the plaintiff's in-
juries did not occur as a result of such carelessness or
negligence.   This instruction is a correct statement of
the law as repeatedly enunciated by this court.   Smith
v. Railroad, 108 Mo. 243; Furnish v. Railroad, 102 Mo.
452; Olsen v. Railroad, 152 Mo. 426; Clark v. Railroad,
127 Mo. 208; Malloy v. Railroad, 173 Mo. 75; Shuler
v. Railroad, 87 Mo. App. 624.   It is the law in all Eng-
lish speaking states and countries.   Gleason v. Rail-
road, 140 U. S. 435; 21 Am. & Eng. Ency. Law (2 Ed.),
512; Stokes v. Saltonstall, 13 Pet. 181 (10 L. Ed. 115).
(b)   Instruction 4 given at the request of the plaintiff
is likewise a correct statement of the law as repeatedly
decided by this court.   Hulsenkamp v. Railroad, 37
Mo. 537; Sweeny v. Railroad, 150 Mo. 393; Furnish v.
Railroad, 102 Mo. 438; O'Connell v. Railroad, 106 Mo.
482; Clark v. Railroad, 127 Mo. 197; Sharp v. Railroad,
114 Mo. 94.   Every possible criticism, if any there be,
urged against instruction 3 or against plaintiff's
instruction 4 is nullified and corrected by defendant's
instructions 5, 6, 7 and 8, as modified, and 9, 10, 11 and

14. If there is any inconsistency between plaintiff's 3 and 4, and these instructions of defendant, it is on the side of favor to the defendant, of which it can not complain. Johnson v. Railroad, 173 Mo. 316; Geisman v. Elec. Co., 173 Mo. 679; Chambers v. Chester, 172 Mo. 462; Bank v. Hatch, 98 Mo. 376; McGrew v. Railroad, 109 Mo. 582; Hughes v. Railroad, 127 Mo. 447; Perrette v. City, 162 Mo. 238; Smith v. Railroad, 108 Mo. 243; Anderson v. Railroad, 161 Mo. 427; Lemay v. Railroad, 105 Mo. 371; Grace v. Railroad, 156 Mo. 303; State v. Smith, 164 Mo. 567; Owens v. Railroad, 95 Mo. 181; Meadows v. Ins. Co., 129 Mo. 97. (c) Defendant's instruction 4 was properly refused as not being applicable to the evidence in the case or justified by it. All statements against a party's interest are not to be taken as true. It is only when they are material and not the result of honest mistake or error. Connor v. Railroad, 181 Mo. 397; Montgomery v. Railroad, 181 Mo. 477; Ephland v. Railroad, 137 Mo. 198; Dahlstrom v. Railroad, 108 Mo. 540; Culberson v. Railroad, 50 Mo. App. 563; 1 Am. & Eng. Ency of Law (2 Ed.), 724; Schafstette v. Railroad, 175 Mo. 156. (3) The court did not err in overruling appellant's motion for a new trial. On the contrary, the maintenance without a watchman of a switch in a road over which thousands of passengers are carried daily which a small boy and broomstick could dislocate and wreck human life and health, which accumulated dirt, rendering it likely to derail the cars, and which, unless properly blocked, could be thrown out of place by the hoof of a horse or by a wagon or buggy wheel, and which had been changed from an automatic to non-automatic operation, all as admitted by defendant's witnesses, should be held to justify a peremptory instruction to find for the plaintiff. Sadtler v. Lead & Zinc Co., 91 Mo. App. 574; Railroad v. Harris, 158 U. S. 326; Hughes v. Railroad, 127 Mo. 447; Fullerton v. Fordyce, 144 Mo. 519; Schmitz v. Railroad, 119 Mo. 256; Pinney v. Railroad,

71 Mo. App. 577; Rinard v. Railroad, 164 Mo. 270; Owens v. Railroad, 95 Mo. 180.

BURGESS, J.—This is an action for seven thousand dollars damages for personal injuries alleged to have been sustained by plaintiff, a passenger upon defendant's cars, by reason of the carelessness and negligence of defendant, and, for one hundred and twenty-five dollars alleged to have been necessarily paid out, or by him become liable therefor, for drugs and the services of physicians in caring for and curing his said injuries.

The petition alleges that while plaintiff was at the time of said injury riding upon one of defendant's cars upon said line as a passenger for hire and for a valuable consideration, and while said car and line of road and track thereof were under the care, control and management and being operated by defendant, by and through its employees and servants, said car line of road and tracks were, carelessly and negligently, so managed, kept and operated and run by the defendant that the said car upon which plaintiff was so riding was, at or near the intersection of said Main and Nineteenth streets in said city, by the said carelessness and negligence of defendant, allowed and caused to be run off and be thrown from the track upon which the same was, and carelessly and negligently allowed and caused to be jerked and tossed about in so violent a manner that plaintiff was violently ejected and thrown from said car and caused to violently fall and strike upon the ground, that is, the granite rock paved street surface, and thereby caused great bodily and mental pain and anguish.

The answer is a general denial.

The trial before the court and jury resulted in a verdict and judgment in favor of the plaintiff for the sum of three thousand dollars, from which defendant appeals. The verdict was by eleven jurors.

The facts are substantially as follows: On October 6, 1899, plaintiff boarded one of defendant's cars at Ninth and Main streets in Kansas City, Missouri, and while going south on Main street to where it turned on Nineteenth street, on reaching the curve at that point, the train came to a sudden stop, by reason of the grip car curving naturally in a southwesterly direction. This was caused by the block being removed from the switch, in consequence of which the car ran off the track, throwing plaintiff from the car and injuring him.

Plaintiff paid his fare and rode to the beginning of the curve at Nineteenth and Main streets. Just before entering this curve there is a switch connecting this track with another track of defendant branching off from it and Main street to the street known as Southwest boulevard which at this point is Nineteenth street deflected slightly to the southwest.

The car upon which plaintiff was seated was operated by a grip attached to an upright bar running down through the floor of the car into and through an iron-rimmed slot in the middle of the track, clamping the moving cable in the conduit beneath the surface. The front wheels of the car for some reason left the Main street track and started out the boulevard track; the grip-bar necessarily continuing in the slot on the Main street track and into the beginning of the curve toward Nineteenth street. The result of this was that the front end of the car was first thrown to the right, off the Main street track, as far as the elasticity and movability sideways of the grip-bar would allow and then jerked violently back towards the Main street rails and suddenly stopped.

The plaintiff testified that the car was off the track; that it stopped suddenly or jerked back suddenly and that he was thrown off and after that the next thing he could recall was that some persons were putting him into the coach car. Other witnesses testified that he was thrown violently off through the air for

several feet, "shot out for twelve feet," turned over and hit on the rock-paved street on his back and shoulder.

On the case in chief the plaintiff testified that he was a passenger; that the car was derailed at the switch and that he was thrown off and injured and without objection by defendant, that he had observed this switch and that it was worn and different from the model produced by defendant and was formerly operated by a "gypsy" contrivance.

Other witnesses testified that the switch was in a bad fix.

At the request of plaintiff and over the objections and exceptions of defendant the court instructed the jury as follows:

"1.   The jury are instructed that by the terms 'ordinary care,' as used in other instructions herein, is meant that degree of care and diligence an ordinary careful and prudent person would ordinarily use under like or similar circumstances.

"2.   The jury are instructed that by the terms, 'highest degree of care,' and 'highest reasonable, practicable degree of care,' and 'care and foresight,' as used in the other instructions, is meant the reasonable practicable degree of care and diligence in view of all the facts and circumstances shown in evidence that a very prudent and careful person engaged in a like business would ordinarily and reasonably take and exercise, or would be fairly and reasonably expected to use, under like or similar circumstances.

"3.   The jury are instructed that if you believe and find from the evidence that on or about October 6, 1899, defendant was operating a street railway and engaged in the business of carrying passengers thereon for hire, that plaintiff was a passenger having taken passage upon one of defendant's cars on said road, and that while he was so a passenger being carried thereon upon defendant's road the said car was thrown from

or left the track upon which it was running and suddenly stopped at or near the intersection of Nineteenth and Main streets in Kansas City, Missouri, and that plaintiff was then himself exercising ordinary care, and that he was by such stopping and derailment of the car thrown from said car and injured thereby, then the law presumes that such injury to plaintiff was caused by defendant's negligence, and such facts, if proved by a preponderance of the evidence, make out a presumptive case for the plaintiff, and you should find a verdict for the plaintiff, unless you further believe from the evidence that, notwithstanding this presumption, the defendant at the time of the happening of the injury in fact had then fully performed, or was then fully performing its duty as defined and stated in other instructions herein towards plaintiff as such passenger; or, that such injury to plaintiff, if any, did not occur because of any failure of the defendant in such respect.

"4.   The jury are instructed that it is the duty of a railway company, such as defendant, engaged in the business of operating a street railway, in the carriage and transportation of its passengers, to have, take and exercise the highest degree of care, reasonably practicable, for the personal safety and safe carriage of such passengers; and that this care should be used and exercised for the purpose of safely operating its cars or trains of cars, in having its tracks and switch appliances and the connections of its tracks constituting a part of such railway maintained and kept in a reasonably good and safe condition, and for such purpose to take and exercise about the same the highest degree of care reasonably practicable in inspecting and keeping such tracks, switch appliances and connections and parts of tracks in good and reasonably safe working order and position.

"6.   The jury are instructed that if under the other instructions and evidence herein they should find for the plaintiff, they will assess his damages at such

sum as they may find and believe from the evidence will compensate him, the said plaintiff, A. S. Logan, for his loss of time, if any, prior to December 23, 1899, naturally and proximately resulting from his said injury, and for all bodily pain and mental anguish that they may find and believe from the evidence he has suffered as a necessary, natural and proximate result of his injuries, and will necessarily and inevitably so suffer therefrom in the future, and any permanent injury or incapacity they may believe from the evidence he has sustained therefrom, by way of permanent weakness, lameness or partial loss of control of plaintiff's back and left leg, and permanent rupture and tearing loose of the muscles and ligaments of plaintiff's back, if any, as a necessary, natural and proximate result of the injury complained of, not exceeding in all the sum of seven thousand dollars.''

The defendant asked the court to instruct the jury as follows:

''1. The court instructs the jury that their verdict will be for the defendant.

''2. If you believe that both parties were negligent, then there can be no recovery herein.

''3. Although you may believe all the evidence to be true, your finding must be for the defendant.

''4. The plaintiff, Logan, was a witness in his own behalf; the jury are the sole judges of his credibility; all statements made by him, if any, which are against his own interest, must be taken as true. But his statements in his own favor are only to be given such credit as the jury, under all the facts and circumstances in evidence, deem them entitled to.

''5. Even though the plaintiff, Logan, was hurt without any fault upon his part, still, under no circumstances can a verdict be rendered against the defendant unless the jury find that the train left the track or came to a sudden stop by reason of the negligence of defendant's agents, servants or employees. If the train

by reason of an unavoidable casualty or accident got off the tracks or came to a sudden standstill, in that way caused plaintiff's injury, if any, then there was no negligence and your verdict must be for the defendant.

"6. Defendant is not required to prove what caused the train to leave the tracks or come to a stand-still, and even if the jury cannot find from the evidence the exact cause, or if such is unknown and has not been shown, still, if after considering all the testimony in the case, not only that offered by defendant but that offered by plaintiff, you find that there was not any negligence on the part of the defendant of the character submitted for your consideration, then defendant must have the verdict, even though Logan was its passenger and received his injury, if any, without any fault upon his part.

"7. Defendant was not an insurer of the safety of plaintiff, Logan, nor was it required to exercise any degree of care or foresight that was not reasonably practicable. Therefore, you are instructed that the mere fact that an accident occurred and plaintiff was injured, if you believe he was, does not of itself entitle plaintiff to recover in this case, and if you find that defendant had used all the care and foresight that were reasonably practicable under all the circumstances, and that the accident happened without negligence on the part of defendant, then the plaintiff cannot recover under any circumstances, but your verdict must be for defendant.

"8. If you find and believe from the evidence that the accident happened by reason of the grip-car leaving the track on which it was running and that it was caused to do so by reason of the switch at the place in question having been removed or interfered with by some outside parties or party, whether purposely or unintentionally, and that defendant had used all the care that was reasonably practicable in inspect-

ing its track and the switch in question, and had not discovered that said switch had been changed or interfered with prior to the accident, then you are instructed that plaintiff cannot recover and your verdict must be for defendant.

"9.   If the jury believe from the evidence that the injuries sustained by plaintiff were merely the result of accident, then your verdict must be for defendant.

"10.   What the court says in the instructions read by plaintiff's counsel as to the burden being on defendant does not mean that you are confined to the testimony offered by defendant in determining whether the burden has been established.   You are to consider all the facts and circumstances in evidence, whether developed in the examination of plaintiff's or defendant's witnesses, and if you find therefrom that there was no negligence of the character submitted, then the burden has been sustained by the defendant and it is entitled to the verdict, even though you find that Logan was a passenger and was injured without fault on his part.

"11.   If defendant's servants and employees exercised all the care and foresight that was reasonably practicable, then there was no negligence, and in determining any issue as to negligence on defendant's part, submitted to you in these instructions, you are instructed that if there was exercised all the care that was reasonably practicable then there was no negligence.

"12.   The jury are not required to accept as true the statement of any person merely because he was sworn to it, but you should consider the interest of such person in the case, his demeanor on the stand, and carefully weigh the statement in the light of all the facts and circumstances developed in evidence, giving it such weight and no more as you deem it entitled to; you are the sole judges as to whether or not you believe it.

"13.   This case should be considered by the jury

the same as if it were a contest between two persons of equal standing in the community. The fact that one of the parties is a corporation should not affect your minds in any way, but the rights of the parties should and must be determined upon the evidence introduced in the case and the instructions given to the jury, which is the law and only law to guide you in your deliberation.

"These instructions, although read to you by the lawyers, are the court's instructions and must be taken and considered by the jury as if they had been read by the judge from the bench.

"14. The court instructs the jury that in considering this case they should not indulge in any mere suppositions or imaginings as to what may or may not have been done or occurred at the time of the occurrence, but must decide the case upon the evidence of the witnesses and the instructions of the court.

"And the court further instructs the jury that they are the sole judges of the credibility of the witnesses and the weight to be given to their testimony, and in weighing the testimony the jury should take into consideration not only what they have testified to, but also their manner of testifying, and their bias, if any is shown, towards or against plaintiff or defendant, their ability at the time to clearly see what occurred, and now to clearly recall and relate the facts, and if the jury befrom the evidence that any witness has knowingly sworn falsely to any material fact, then the jury may disbelieve the whole or any part of such witness' testimony."

The court gave said instructions numbered 5, 6, 7, 9, 10, 11, 12, 13, and 14, and refused to give said instructions numbered 1, 2, 3, 4, and 8, as asked by defendant, and to this action, order and ruling of the court, in refusing to give said last-named instructions, and to give each of them, defendant at the time duly excepted.

The court of its own motion, and over the objection and exception of defendant, instructed the jury as follows:-

"8. If you find and believe from the evidence that the accident happened by reason of the grip-car leaving the track on which it was running, and that it was caused to do so by reason of the switch at the place in question having been interfered with by some outside parties or party, whether purposely or unintentionally, and that defendant had used all the care that was reasonably practicable in watching and inspecting its track and the switch in question, and had not, and could not, by the exercise of ordinary care, have discovered that said switch had been interfered with, if you so find the fact prior to the accident, then you are instructed that plaintiff cannot recover, and your verdict must be for defendant.

"You are instructed that nine or more jurors may render a verdict in this case.

"If all of you agree upon a verdict your foreman alone will sign it, but if your verdict is rendered by nine or more and less than twelve jurors, such verdict must be signed by all of the jurors who agree to it."

Under the evidence and the instructions given by the court, the jury returned the following verdict, viz.:

"We the undersigned jurors, find the issues for the plaintiff and do assess his damage at three thousand dollars."

In order that the evidence may be better understood the following plat is attached:

NORTH

18TH ST.          18TH ST.

WEST                    EAST

CABLE SLOT

CABLE SLOT

+ POINT OF
ACCIDENT

ELECTRIC LINE NO SLOTS

ELECTRIC LINE NO SLOTS

CABLE SLOTS

19TH ST.

MAIN STREET

Plat of the Place of the Accident, and of the Switch
and Tracks.

With respect to the testimony of one W. S. Atley, a witness for plaintiff, as to the condition of the switch at the time of the accident, the following occurred:

"Q. State, without saying it was in a bad condition, what you observed about it? A. I observed that the switch was badly worn. It was an old-fashioned switch that they have had there a number of years, an old gypsy switch, and the car left the track, passing over the point of the switch about two feet from the point of the switch. May be not quite so much, but about that.

"Q. Referring to this model which is before the jury, tell them what you mean by the switch? A. I don't know that I can tell them from that switch. There was a switch that came down in here (indicating). This tongue was wedged, and the trucks going over here passed over this corner of the switch, I would say, about two feet from this point.

"Q. You spoke of it being worn, what part did you refer to? A. This point here (indicating).

"Q. You may state to the jury what, if anything, you know about cars being brought up there, electric cars and others, from the Southwest boulevard track and shifted to this track at that point.

"Objected to by defendant as wholly immaterial and as not tending to prove or disprove any issue in the case.

"The Court: He may state with reference to their passing at that point.

"To this ruling of the court the defendant at the time duly excepted.

"Q. Well the cars brought up from the Southwest boulevard, what was done with them? A. They jumped them over the switch there.

"Q. How? A. Sometimes they would use brickbats, sometimes fish-plates, most anything they could get to raise them over the switch. I have stood there a number of times and watched them do it. Not that I was

particularly interested, but I happened to see it done.

"Q. Has that occurred within the time your office was there, before the accident? A. Yes, sir.

"Mr. Lucas: Defendant moves to strike out the answer as incompetent, irrelevant and immaterial and as not tending to prove or disprove any issue in controversy.

"The Court: I think it is competent to show how the cars passed over there at that point.

"To this ruling of the court defendant at the time duly excepted."

Defendant insists that this evidence should not have been admitted, and that it could have served no other purpose than to create the impression in the minds of the jury that the switch was defective, when, in fact, it was so constructed that one part thereof was designed for cable and the other for electric cars, and on account of the non-use of the electric line, was blocked for the cable alone. There are other reasons assigned by defendant why this evidence should not have been admitted. But it will be observed that objections were only made to two of the questions stated, one by objecting to the question at the time it was asked, and the other by motion to strike out the answer thereto. They were both in respect to cars brought up to the switch, electric cars, and others, from the Southwest boulevard track and shifted to the track upon which the car in which plaintiff was riding at the time of the accident; and, while defendant objected to the question, and the motion to strike out was overruled, the matter was reconsidered by the court, and the motion to strike out was sustained, and the jury directed to disregard the evidence, and whatever error there was in the admission of the evidence in the first place, was corrected.

It is said that the court erred in permitting one Montgomery G. West, a witness for the plaintiff, to testify to the method of transferring cars to the South-

west boulevard, as that was not material to any issue in the case; but it does not appear from the record that there was any valid objection made at the time to the testimony of this witness, hence, nothing before us for review in regard to it.

One Robert B. Logan, son of plaintiff and witness for him, was permitted to testify in rebuttal over the objection of defendant, and to present a draft, and give evidence of the condition of the track and switch from his examination of them, eight days after the accident, and this ruling is assigned for error. The position of defendant is that the evidence was inadmissible because subsequent to the accident and too remote in time.

There was evidence, however, that the switch was in the same condition at that time that it was at the time of the accident, and under such circumstances there was no error in admitting the evidence. [Swadley v. Railroad, 118 Mo. 268; State v. Buchler, 103 Mo. 203; Gutridge v. Railroad, 105 Mo. 520.]

Complaint is made of the action of the court in permitting plaintiff over the objection of defendant to introduce evidence in rebuttal that should have been introduced in chief, but this was largely within the discretion of the court, and, in the absence of an abuse of such discretion, the judgment should not be reversed upon that ground. [Jackson v. Railroad, 118 Mo. 199; State v. Murphy, 118 Mo. 7.]

Defendant contends, first, that it is not liable on account of not having approved machinery and track, including switch, with careful and prudent inspection; second, that the block holding the switch tongue in place had been removed by two boys not five minutes before the accident, without the consent or knowledge of the defendant.

In support of these contentions the evidence adduced is as follows:

W. S. Atley, plaintiff's witness, testified:

"Q.    Now, as I understand you these railroad men call this a frog?    A.    Yes, sir.    .

"Q.    But you and I will call it a block, the purpose of which is to hold that piece of machinery, whether of wood or metal, in a position of rigidity?    A.    Yes, sir.

"Q.    Did they have that kind of a switch there?    A. No, sir; this was wedged over there, but not with a block like that.

"Q.    Well, put it this way.    In other words, did they have the same kind of a piece of machinery either wood or metal, the purpose of which was to hold that tongue rigid?    A.    Not this particular part of it in here; but there was a block in here (indicating).

"Q.    It was a block?    A.    Yes, sir.

"Q.    And when it got to this part it had been pressed out?    A.    Yes sir; or it was worn down this way, to a feather edge.

"Q.    And this block was standing in here?    A.    I don't know about that.    It was under the car and I could not tell that.    I am giving you what I saw before the accident and afterwards.

"Q.    You don't pretend to know whether the block was there at that time or not?    A.    No; I couldn't say, because the car had stopped right on there.

"Q.    Did you go to your office before they moved the car?    A.    Yes, sir.

"Q.    You were not there when the car was lifted up?    A.    Yes, sir; but I went to the office in the meantime.

"Q.    I understood you to say you think the car had moved, or did you say, two feet or more?    A.    The trucks passed about two feet over the point of the switch, I think.

"Q.    Which car?    A.    The grip-car."

Montgomery G. West, plaintiff's witness, testified:

"Q.    You may state if you noticed any disturbance in the car, as to whether it was on the track before it

came to this sudden stop. What you saw there? A. From appearance it was on the track.

"Q. How was it with reference to the switch where it stopped. Look at this plat. Assuming that that is the switch at that point (indicating) and the car was going south on this track, state where the car stopped with reference to that switch and the curve there. How near was it to the curve when you saw it stop? A. The car was right on the curve.

"Q. You may state if you noticed anything as to the switch being jammed or not? A. Well, the part of the switch which I would call the frog was not injured, but about two feet further down it was jammed and the wheels probably had run into it.

"Q. Look at this model down here and state to the jury just what you mean by that? A. Well, I should say it was about in here, about two feet from the point of the switch, where there was apparently jammed and cut into by wheels.

"Q. Did you notice anything as to the end of this point? A. No, sir; I didn't notice anything as to that.

"Q. Now, this track, which leads off to the Southwest boulevard, do you know whether or not that was being used by the company for the passage of cars; if so, what cars? A. Well, it was used to bring cars, from the Southwest boulevard to transfer them onto Nineteenth street. It wasn't used regularly for passenger traffic.

"Q. As I understand you, the front wheels of the grip-car went off on the Southwest boulevard track? A. Yes, sir; they started that way.

"Q. And there was no slot in that track? A. No, sir.

"Q. And that pulled the grip-car over towards the west? A. Yes, sir; on account of the car going west on the boulevard track."

D. F. Brightwell:

"Q. State what examination you made? A. We

went back and looked at the switch in order to see what was wrong with it.

"Q. What did you ascertain? A. I found out the reason; the switch was out of fix.

"Q. How? Describe it to the jury. A. Well, the switch tongue was bent about a quarter of an inch.

"Q. Did you examine the switch to see if there was any marks on it? A. Yes, sir.

"Q. What did you find? A. The switch tongue stood just about like this. (indicating), and it kept spread like this, and when the car came down it struck on the point of the switch and came straight down here and went out the Southwest boulevard. Of course the grip followed the slot on the line.

"Q. What do you know as to that switch being blocked at that time? A. It had not been blocked since they took the weight out of there, when they quit pulling the boulevard cars."

The version of the defendant was, and its evidence showed, that the accident was occasioned by the unauthorized removal of the block that held the switch tongue in its place.

Mrs. Carrie G. Johnson:

"Q. What is your name? A. Mrs. Carrie G. Johnson.

"Q. Are you married or single. A. Married.

"Q. Did you live in Kansas City, Missouri, on October 6, 1899? A. I did; Kansas City is still my home.

"Q. Did you see an accident which occurred on Nineteenth and Main street on October 6, 1899? A. I did.

"Q. What did you see? A. I saw a car which was south and east-bound on Main street appear to jump off the track there at Nineteenth and Main, and saw an old gentleman thrown from the front part of the grip-car.

"Q. Did both cars jump the track? A. No, it

appeared to me that the wheels of the grip-car, only, left the track.

"Q. Where were you when the accident occurred? A. Standing on the southeast corner of Nineteenth and Main streets with Mr. Scales; he is my daughter's husband. I was intending to take the car which met with the accident.

"Q. Do you know what caused the car to leave the track? A. Before the cars come to Nineteenth and Main street I noticed two boys, one a white boy and a negro, take something out of the track right at the point where the track comes in there from the Southwest boulevard; the white boy had a stick, looked to me like a broom handle, and he seemed to be prying something out from between the rails at the switch; when he got it out the other boy picked it up; it looked to me like a small piece of dark wood or iron, from where I was; after examining it the boy threw it down again; both boys then went west from the track and into a vacant lot or a yard right next to the house or store on the northwest corner of Nineteenth and Main street.

"Q. How long was this before the accident? A. I should say not over five minutes. We had to wait a little longer than usual for the car that time, I thought, and it may have been a little more."

John T. Mathis:

"Q. What is your business? A. I am at present with the Metropolitan Street Railway Company.

"Q. In what department? A. In the claim department.

"Q. What business were you engaged in on the sixth of October, 1899? A. In the claim department of the Metropolitan; law department.

"Q. State whether or not you were at Nineteenth and Main streets on the day the accident occurred in which Mr. Logan was hurt? A. Yes, sir.

"Q. What time were you there? A. I got there

about three or four minutes after the accident took place.

"Q. Where did you come from? A. Nineteenth and Grand avenue.

"Q. Tell these gentlemen whether you looked to see what caused the accident? A. Yes, sir.

"Q. Well, you may look at that model and see whether that represents the frog and switch there? A. Yes, sir.

"Q. Did you see a block like that in the frog at that time? A. It was not in the frog.

"Q. Did you see the block at all? A. Yes, sir.

"Q. Tell these gentlemen where it was? A. It was picked up between the tracks, on the east side of the south-bound track."

It is said for defendant that instruction number three given for plaintiff is erroneous in that it authorizes a recovery by the plaintiff in the mere fact of accident and injury, when the real cause thereof was shown by the evidence to have been either a failure to block the switch, or a removal of the block by some unauthorized person.

If there is anything well settled by the courts of this State, it is, that where a passenger for hire upon a train of cars is injured, the fact of the derailment of the car and his injury makes out a prima facie case of defendant's negligence, which, unless explained, entitles him to a recovery, and in order to overcome this prima facie case and right to recover it devolves upon the carrier to explain how these things occurred, in some way, not inconsistent with its duties to the plaintiff as such carrier. In other words, when a passenger for hire shows the derailment of the train upon which he is traveling, and as a result thereof he is injured, he makes out a prima facie case, and the burden then rests upon the carrier to explain how these things occurred, and in a way not inconsistent with its duty to the plaintiff as a passenger.

In the case of Furnish v. Railroad, 102 Mo. 438, it is said:

"Regarding the instruction (marked 'D') placing the burden of proof upon defendant to show that the injury did not occur through any omission to discharge its legal duty in the premises, it should be remarked that the same instruction first required plaintiff to establish that the car in which she was a passenger 'ran off the track of defendant's railroad and fell down the embankment thereof' and that she was thereby injured. Thus framed the instruction correctly expressed the law on the subject. The mere injury of plaintiff while a passenger did not call for explanation or proof from defendant. It first devolved on plaintiff to show some fact with reference to it from which negligence on defendant's part as a carrier might be fairly inferred. Here it was shown that the car ran off the track and over the embankment. The condition of the roadway at that point warranted the inference that the injury was occasioned thereby. In that state of the case, if the jury found that plaintiff had been injured by the derailment of the car and its fall down the embankment, it then devolved on defendant to explain how these things occurred without breach of its duty to plaintiff as a carrier. This is what the court said in effect, and it committed no error in so doing. [Hipsley v. Railroad, 27 Am. and Eng. R. R. Cas. 287, and 88 Mo. 348; Breen v. Railroad, 109 N. Y. 297; Seybolt v. Railroad, 95 N. Y. 562.] It may not be entirely in accord with technical nicety to instruct that the burden of proof shifts to defendant in the course of such a trial. It might be more accurate to say (in proper form for the purposes of a jury trial) that the facts of the derailment of the car and of plaintiff's injury thereby make out a prima facie case of defendant's negligence, which, unexplained, would justify a recovery; but, in the ordinary course of administering law, it has become usual to declare that, on a certain showing by plaintiff in such cases, the

burden of proof then rests on defendant to prove that it has not been negligent.'' [Olsen v. Railroad, 152 Mo. 426; Clark v. Railroad, 127 Mo. 197.]

We are unable to appreciate the contention of defendant, that, as the cause of the accident was known, it was error to instruct the jury concerning the presumption arising from the relation of passenger and carrier. Because of that relation between plaintiff and defendant at the time of the injury, when he showed that fact, the derailment of the car and his injury, he made out a prima facie case, while under any other circumstances the burden would have been upon him to show negligence, or circumstances from which negligence might be inferred in order to entitle him to recover; and it must logically follow that when plaintiff showed those facts the presumption was that the injury was occasioned by the negligence of the defendant. If the law raises such a presumption it would seem not improper to so state in an instruction.

It is claimed that instruction four given for plaintiff is erroneous and should have been refused because it tended to confuse and mislead the jury, enlarge the issue in the cause, and exacted of defendant a higher degree of care than required by law. That this instruction is not as clear as it should be must be conceded, but when fairly construed, and taken in connection with defendant's instructions, we are not prepared to say that it misled the jury. The words ''and this care should be used and exercised for the purpose of safely operating its cars or train of cars in having its tracks and switch appliances and the connection of its tracks constituting a part of such railway maintained and kept in a reasonably safe condition,'' evidently meant at the place of the accident, for there is no pretense that the condition of the track at any other point had anything to do or connection with the accident, and no other conclusion can fairly be drawn from the use of this language.

The same may be said with respect to the duty of defendant "in inspecting and keeping such tracks, switch appliances and connection and parts of tracks, in good and reasonably safe working order and position." It clearly has reference to the place of the accident, and this, we think, is clearly conceded by the eighth instruction given for defendant by the use of the words, "and that defendant had used all the care that was reasonably practicable in inspecting its track and the switch in question, and had not discovered that said switch had been changed or interfered with prior to the accident" then plaintiff could not recover.

While an instruction should not be broader than the issues raised by the pleadings and evidence, whatever doubt may have existed, if any, as to the meaning of this instruction is dispelled when read in connection with the instruction given for defendant.

The evidence shows that the accident was caused by the derailment of one of defendant's cars in which plaintiff was riding as a passenger, that the derailment was caused by a defective switch, and there is nothing in the case to indicate that the jury could have found that the accident was attributable to any other cause.

As was said in substance by MARSHALL, J., in Johnson v. Railroad, 173 Mo. 307: And whatever generality the instruction complained of contained, was cured by the instructions of defendant which limited plaintiff's right to recover to the specific negligence charged in the petition, and told the jury that plaintiff was not entitled to recover merely because plaintiff was its passenger and received his injury, if any, without any fault upon his part. . [Chambers v. Chester, 172 Mo. 461.]

It is claimed that the court erred in refusing instructions one and three, asked by defendant. These instructions are simply demurrers to the evidence and were properly refused. There can be no doubt under the facts disclosed by the record but that the case was

properly submitted to the jury. The evidence clearly warranted it.

It is also said that instruction numbered four asked by defendant should have been given. This contention is based upon the fact that plaintiff had testified that the switch was defective, and upon cross-examination admitted that he had only casually observed the same, and could not tell its manner of operation. The statement of plaintiff that the switch was defective was a mere matter of opinion, and the fact that he testified upon cross-examination that he had only made a casual examination of it and never saw it in operation, did not authorize the instruction, as the statements were not necessarily in conflict. There were no admissions in plaintiff's evidence requiring it. [Montgomery v. Railroad, 181 Mo. 477; Conner v. Railroad, 181 Mo. 397.]

The same may be said with respect to the alleged statements made by plaintiff with regard to the prior condition of his health and his examination by physicians. Moreover, instruction numbered twelve, given on the part of defendant, covered substantially all that was embraced in the refused instruction.

A final contention is that the court erred in overruling defendant's motion for a new trial. Defendant asserts that the uncontradicted facts entitled defendant to a verdict, and judgment should be accordingly. When this court is asked to reverse the judgment of the trial court upon the ground of the want of evidence to support it, it will not do so where there is any substantial evidence to authorize it, and we are unprepared to say there was no substantial evidence to authorize the verdict in this case, and its weight was for the consideration of the jury. Nor is there anything disclosed by the record which indicates that the verdict was the result of bias or prejudice. It met with the approval of the court. The instructions covered every phase of the

case, and were fair to the defendant.    Under such circumstances we must decline to interfere.

The constitutional question raised in the court below is not insisted upon in this court; it has, however, been decided adversely to defendant's contention in the court below, since this appeal.    [Gabbert v. Railroad, 171 Mo. 84.]

The judgment is affirmed.    All concur.