VADA DOBSON, RESPONDENT, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, APPELLANT.*

Springfield Court of Appeals.   Opinion filed September 28, 1928.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 3014, p. 1032, n. 36; Evidence, 22CJ, section 621, p. 535, n. 7; Railroads, 33Cyc, p. 1021, n. 95; p. 1031, n. 63; p. 1032, n. 69; p. 1067, n. 79; p. 1104, n. 32; p. 1113, n. 72; p. 1122, n. 20

*E. T. Miller* and *Mann & Mann,* for appellant.

814

*Sizer & Gardner* for respondent.

BAILEY, J.—This action is brought by the widow of Paul Dobson, deceased, who was struck and killed by defendant's westbound passenger train at the Weller Street crossing in the city of Springfield, Missouri, on December 14, 1926, at about 7:30 A. M. Deceased was driving a Dodge truck at the time and was instantly killed in the collision. The trial resulted in a verdict and judgment for plaintiff in the sum of $5750 and defendant has appealed. This court heretofore rendered an opinion affirming the judgment but sustained a motion for re-hearing.

The petition contained several specifications of negligence but the instructions submitted the case solely on the theory of defendant's failure to give the statutory signals. The answer, after a general denial, pleaded failure of plaintiff's husband to observe an ordinance of the city of Springfield requiring that motor vehicles shall come to a complete stop before proceeding across railroad grade crossings; also failure of deceased to exercise the highest degree of care and contributory negligence. The reply was a general denial.

Defendant has assigned error in three particulars which are as follows: (1) That the court erred in permitting witnesses to testify as to the effect of obstructions to the view; (2) error in giving plaintiff's instruction number two; (3) and error in refusing defendant's instruction in the nature of a demurrer to the evidence offered at the close of plaintiff's case and again at the close of all the evidence. We shall consider these propositions in order.

In considering the first proposition it is necessary to state that the evidence objected to follows statements of witnesses in each instance that there were three of defendant's tracks at this crossing; that the south track is the main line and there are two tracks north of that, one a "passing track" and the other, farthest north, a "storage or side track;" that there were box cars standing on the side track, farthest north of the three tracks, two cars being west of the street and a whole string of cars extending eastward, with

an opening made for the crossing between. The character of the evidence to which objection is made may be illustrated by the testimony of one witness, Mrs. W. W. Leath, who lived near the crossing and was familiar with it. Her examination proceeded as follows:

"Q. You may tell whether or not when you drove down there— those cars as they were—could you see a train coming from the east on the main line?

"By Mr. Mann: We object to that for the reason it calls for the conclusion of the witness and invades the province of the jury, and has no reference to the man in question who was struck, but the general observance of the witness.

"By the Court: The objection is overruled.

"Defendant excepts.

"A. You couldn't.

"Q. In other words, you would have to get up to what point before you could see a train on that line?

(Same objection as before.)

"By the Court: The objection is overruled.

"Defendant excepts.

"A. On the second track.

"Q. Have to pass those cars? A. Yes, sir, you sure would.

"Q. When you come up how close to the front end of your car— how close would it be to the track?

(Same objection as before.)

"By the Court: The objection is overruled.

"Defendant excepts.

"A. Would be just about on it."

This witness, as well as all other witnesses who testified as to their ability to see an approaching train at this crossing, first fully described the situation of the cars, the distance between the box cars, the location of the tracks and they were shown to be familiar with the crossing. While this testimony was non-expert opinion evidence, we think its admission was not reversible error. Where the facts upon which an opinion is based are fully disclosed there are many instances in which such non-expert opinions are admitted, as in cases involving the value of property, speed of trains, questions of sanity, etc. The facts being before the jury they were in position to judge of the credibility of these witnesses. They were thoroughly cross-examined and defendant was not prejudiced by the admission of this testimony. [Sandry v. Hines, 226 S. W. 646; Edwards v. Company, 221 S. W. 744, l. c. 747; Brown v. Railroad, 286 S. W. 45, l. c. 50.]

(2) Error is assigned in giving plaintiff's instruction No. 2. This instruction informs the jury that if they find from the greater weight of the evidence that deceased approached the railroad crossing exercising the highest degree of care, that he looked and listened for

approaching trains and stopped his car before going on the railroad track; that his view was obstructed to the east until he passed the box cars on defendant's house track; that defendant's servants at the time failed to sound the whistle and failed to ring the bell on the locomotive and that deceased neither heard nor saw the approaching train until he passed from behind said obstructions, "then you are instructed that until the deceased came in view of said train he had a right to assume that the servants and employees of the defendant, in running its train would either ring the bell or sound the whistle thereon when approaching the crossing of the public street on which he was traveling."

It is defendant's contention that the quoted portion of said instruction is erroneous and constitutes reversible error. No authorities are cited under this point. The argument is that this instruction informs the jury that if plaintiff's husband looked and could not see; listened and could not hear, "then he had a right to go ahead and approach this crossing at a speed which he might be expected to operate at if he could see and knew that no train was approaching. It ignores, in fact it refutes entirely the absolute duty which rested upon deceased to so approach this crossing, that he could stop after he reached a point where he could see." The rule of law seems to be well established that where the view at the crossing is so obstructed that a traveller in an automobile, by exercise of the highest degree of care, cannot see an approaching train and can hear and listens, but does not hear an approaching train, then he has a right to rely on the servants of the railroad company obeying the statutory requirements as to giving crossing signals, although, of course, his duty to exercise due care continues. [State ex rel. v. Trimble, 254 S. W. 846; McKerall v. Railway, 257 S. W. 166, l. c. 169.]

An instruction similar to the one in this case was given in the McKerall case, supra, but held to be erronous for the reason that the view of the traveller was not so obstructed as to invoke the rule stated. But in the present case it is practically conceded the view was so obstructed by the box cars as to make an application of the doctrine proper. Defendant seems to take the view that this rule which permits the traveller to assume the statutory signals will be given under certain circumstances is a rule of law adopted by the courts on appeal, but that it is not proper to so instruct the jury. In the case of Hutchinson v. Safety Gate Company, 247 Mo. 71, l. c. 103, 152 S. W. 52, the Supreme Court approved an instruction which informed the jury that "if you find no evidence to the contrary, you may assume deceased, at the time he was injured, was in the exercise of ordinary care." If it is proper to give to the jury, in an instruction, the benefit of the presumption of due care, we can perceive no

sound objection to instructing the jury that the deceased had a right to assume, under the circumstances set forth in the instruction complained of, that the statutory signals would be given. In the case of Logan v. Railway Company, 183 Mo. 582, 82 S. W. 126, the jury was instructed as to the presumption arising from the relation of passenger and carrier. The Supreme Court held the instruction proper, using this language, "If the law raises such a presumption it would seem not improper to so state in an instruction." The instruction in the case at bar is subject to criticism in that it does not clearly inform the jury that deceased's duty to exercise the highest degree of care continued even after he passed the obstruction. It does, however, state in effect, the assumption that the signals would be given continued only "until deceased came in view of the train." It also requires the jury to find that he stopped, looked and listened and exercised the highest degree of care as he approached the crossing. This instruction, should also be considered with defendant's instruction No. 13, which in part reads as follows:

"The court instructs the jury that if you find that there were obstructions to the view of the deceased as he approached the track then it was the duty of the deceased to exercise the (very) highest degree of care in approaching the track and it was his duty to so approach the track that he could stop, if it was possible for him to do so, by the exercise of the highest degree of care after he saw, or could have seen, the train after passing the obstruction to his view and if you find that he failed so to do, then your verdict must be for the defendant."

We are of the opinion the jury was fairly informed as to the law of the case and that the giving of Instruction No. 2, did not constitute reversible error.

(3) We come now to defendant's contention that the court erred in refusing defendant's demurrer to the evidence. The first point made is that there was no testimony of probative force that the signals required by law were not given. On this question the witness Northrup testified that he saw the train in question when within 250 feet of where he was standing; that he did not hear any bell or whistle on the train; that he "certainly would have heard it because I usually noticed these things." Mrs. Belle Hendrix lived near the track. She heard the crash when the accident happened. She testified that, "Before I heard this crash there was no bell or whistle sounded on that train." Mrs. Scharnhorst operated a store near this crossing and she heard the crash of the collision. She testified that "before I heard the crash I did not hear any bell or whistle on that train. I heard a whistle afterwards." On cross-examination she stated, "I heard this train coming, but it didn't whistle." Henry Scharnhorst also testified that he heard the "racket" but "did not

hear any bell or whistle.'' Mrs. Van Hook lived near the place of accident. She testified she heard the train running and heard .the crash when it hit the truck. She was asked whether or not she could tell that there was a whistle sounded or bell rung on the train before the crash, to which question she said, ''There positively was not.'' Defendant's evidence tended strongly to prove the statutory signals were given. It is clear, however, from the evidence above quoted, that the question of the statutory signals being given was for the jury, even though the testimony to prove that fact was negative in character. [Stotler v. Railroad, 200 Mo. 107, l. c. 137, 98 S. W. 509.]

It is next contended that deceased was guilty of contributory negligence as a matter of law barring recovery. There is no dispute as to certain physical facts. Weller Avenue is an unpaved public thoroughfare of the city of Springfield and runs due north and south. At the point where it intersects defendant's right of way, defendant maintains three parallel railroad tracks. These tracks run east and west and thus intersect Weller Avenue at right angles. The south track is the main line track of defendant between Springfield and St. Louis; the next track North is the passing track, intended to permit trains to pass each other; the track farthest north is a switch track which extended for a considerable distance east and west of the crossing. These tracks were all standard gauge, the distance between the rails being four feet, eight and one-half inches. According to testimony of plaintiff's witnesses the distance between the south rail of the switch track and the north rail of the main line track, was twenty feet and two inches. The right-of-way of Weller Avenue was shown to be fifty-two feet and two inches, the travelled portion being about twenty-seven feet in width. At the time of the accident, which occurred about 7:30 on the morning of December 14, 1926, a string of box cars occupied the north or switch track, extending eastwardly out of sight and westwardly the length of two box cars, with a space in between the cars at the crossing about the width of the street, or approximately fifty feet, and the center of the street about bisected that ,distance between the ends of the box cars where they were separated. There were no other cars or obstructions between the switch track and the main line track.

Plaintiff's husband was a young man about twenty-three years of age and in good health; at the time of the accident he was in the employ of a Springfield bakery and was driving a Dodge delivery truck engaged in delivering bread to various stores. This crossing was familiar to him. The box cars had been in the same position on the switch track for several days. Just before the accident deceased was driving south on Weller Avenue, approaching this crossing. The evidence shows that he held out his hand and stopped his truck with the front wheels somewhere between the rails of the switch

track on which the box cars were located. After a short interval he then started on at a speed of not to exceed five miles per hour and, according to plaintiff's evidence, in second gear. At that moment defendant's West bound passenger train was travelling from the East on the main line or south track at a speed of about thirty-five or forty miles per hour. According to plaintiff's evidence, upon which this demurrer must be decided, no whistle was sounded or bell rung. As deceased drove the short distance between the tracks, he was noticed to swerve his car to the west just before he was struck and killed by the train.

It is in evidence that the over-hang of the box cars beyond the rails was about two feet and the over-hang of defendant's locomotive was likewise about two feet. This left a clear space of approximately sixteen feet between the South edge of the box cars and the point to which the engine would extend on the main line track. It is also shown by one of the photographs offered in evidence by defendant, as well as other testimony, that the front of a Dodge truck similar to the one in which deceased was riding, extends five or six feet beyond the driver's seat. It is then clear that when deceased reached a point where he was even with the south side of the nearest box car the front end of his truck was within about ten feet of where it might be struck by defendant's locomotive. It is conceded that he could not have seen the approaching train from the point where he stopped with his front wheels between the rails of the switch track, although he could see a short distance east. It is not clear from the evidence at just what point he could have seen the train after he started on again. The angle of vision would no doubt have enabled him to see some distance to the east slightly before his eyes reached a point even with the south side of the box cars, at which point he could see several hundred feet down the track to the east. The distance between the rails of the switch track was four feet and eight and one-half inches. The distance between the south rail of the switch track to the north rail of the passing or middle track was a little less than eight feet. The over-hang of a car on the track was estimated at about two feet. Before deceased, when in his seat six feet back of the front of his truck, could have had a clear view of the main line track he would have had to have driven south until he was about even with the over-hang of the box cars standing on the north track and east of the roadway. At that time the front end of his truck would have been approximately six feet farther south and would have been on the north rail of the middle or passing track or at least where it could have been struck by any train which might be operating on said middle track. When in that position, the front of his truck would have been within about ten feet of where it could be struck on the main line track.

It seems to us that the crux of this case is whether the ordinances of Springfield and the demands of the highest degree of care, required deceased to have again stopped after he was in a position where he would have had a clear view of the main line track. Defendant contends that the fact that deceased's vision was obstructed by the box cars and the distance between the obstruction and the main line track was short, made it imperative that he either have stopped, where he had a clear view of the track or have approached the main line at such a speed that, after seeing the train he could have stopped, citing among other cases, Hayden v. Railway, 124 Mo. 566, 28 S. W. 74; Langley v. Hines, 227 S. W. 877, 207 Mo. App. 587; Evans v. Railroad, 289 Mo. 493, 233 S. W. 397; Monroe v. Railway, 297 Mo. 633, 249 S. W. 644; Carroll v. Railroad, 229 S. W. 234; Dickey v. Railroad, 251 S. W. 112; Freie v. Railroad, 241 S. W. 671; Spaunhorst v. Railway, 238 S. W. 821, 209 Mo. App. 319.

A review of those cases seems unnecessary. It is sufficient to state they establish the rule that it is the duty of the operator of a motor car, or other vehicle, to approach a crossing at such speed that he can stop his car or vehicle after reaching a point where he could see an approaching train and before coming into the danger zone. Such a person may not drive blindly or heedlessly onto a railroad crossing relying on the statutory signals being given and especially is that true where the view is obstructed. He must make use of all his senses and approach cautiously, stopping, if necessary, at a point where he can see after passing any obstruction to his vision. But our courts have never held that it was the duty of the operator of a car to do more than stop, look and listen at a place where he can remain in safety and make use of his faculties. There are occasions when it is practically impossible to remain in a place of safety and see the track for any distance beyond the crossing. Under such circumstances the law does not require that the traveller get out of his conveyance, walk forward and look up and down the track. [McKerall v. Railroad Company, 257 S. W. 166.]

In many cases, if this were a requirement, it is obvious that a train might approach and be upon the wary one by the time he could return to his car and start ahead. We realize this case is similar in many important particulars to the cases cited by defendant in which contributory negligence was held to exist as a matter of law. There are certain facts, however, which we believe distinguish it from the others. Deceased did stop his car at the north or passing track and we may assume he then looked and listened for an approaching train. He was even then in a place where he might apprehend some danger because the evidence shows a train was switching to the west and his wheels were on the north track. He did not

know whether that train was moving cars on the middle or passing track or whether it might be about to move cars on the other tracks. Up to that point, he surely may be considered to have been exercising the highest degree of care and to have been obeying the ordinance of the city of Springfield requiring him to stop at railroad crossings. He then proceeded forward, having the right to assume that if trains were approaching on any of defendant's tracks the statutory crossing signals would be given. That of course did not relieve him of the duty to continue to exercise the highest degree of care. There was not room to stop his car again without some portion of it standing on one of the two North tracks. It cannot be said there was no danger in so stopping under the circumstances. He proceeded slowly at five miles per hour, having the right and duty to look in both directions. He may have looked to the west where one of the defendant's trains was switching. He may have afterwards looked to the east. The front of his car was then actually within about ten or twelve feet of the danger zone on the main line track upon which defendant's train was speeding at forty miles per hour. The engineer testified that, "I was about sixty feet from the crossing and whistling the last of the road crossing whistle when I saw the wheels of that automobile come out between the cars. I took my other hand and shot the brake into emergency, then I turned my head, I knew he was going to get hit." The shortness of the space and time is emphasized by this testimony.

We have given this case careful consideration and it has been twice argued. There are facts and circumstances from which a jury might draw the conclusion that deceased was guilty of contributory negligence. However, "unless that is the only conclusion that can be reasonably drawn from those facts and circumstances, the demurrer to the evidence was properly overruled. If the evidence was such that there could reasonably be no two opinions about it, then its effect should have been declared by the court as a matter of law, otherwise, it was a question for the jury." [Campbell et al. v. St. Louis & Suburban Railway Co., 175 Mo. 161, l. c. 172.]

We think the facts in this case are such that a jury might reasonably believe that deceased was constantly in a place of danger from the time he stopped his truck until he was struck by defendant's train, or at least that he had a right to apprehend danger on all the tracks. He stopped his truck and, we may assume, it was for the purpose of looking and listening as best he could and that he did so look and listen. We think the jury had a right to conclude that there was no place of safety, from his view point, between the place where he stopped and the main line track, where he could have again stopped and have had a clear view of the main line track. We are fully cognizant of the rule announced in Kelsey v. Railroad, 129

Mo. 362 (and many other cases), to the effect that a traveller on the highway does not perform his duty in stopping and attempting to look at a point where he cannot see and that the duty to look and listen continues so that "if there is a point between the obstruction and the track which gives 'opportunity to see, it is the duty of the traveller to look." [l. c. 372.] He is not required, however, to go into a place of danger in order to look.

Defendant's contention that there was a place of safety where deceased could have stopped and seen the on-coming train after leaving the position where he did stop, is not so clear from the facts in evidence that this court can declare as a matter of law that deceased was guilty of contributory negligence in that respect. If he was not guilty of negligence as a matter of law in failing to stop and look from some point where he had a clear vision, the question then is whether travelling at the rate of five miles per hour, he could have stopped his truck, after he saw, 'or by the exercise of the highest degree of care should have seen, defendant's train and have avoided the collision. There is evidence that he could have stopped his truck, travelling at that speed, within a distance of about three feet. The truck travelled only a little over ten feet from the point where deceased passed the obstruction of the box cars to the point of collision. It covered that distance in two or three seconds. He was in imminent peril. Three seconds, under such circumstances, do not afford sufficient time for the eye to see, the brain to comprehend and the hand to act, whether it be on the part of an engineer in charge of a train or the operator of a car on the highway. [Burge v. Railroad, 244 Mo. 76, 148 S. W. 925; Swigart v. Lusk, 196 Mo. App. 471, 192 S. W. 138.]

Plaintiff of course made a prima-facie case by proving the statutory signals were not given. This prima-facie case entitled her to go to the jury unless her own evidence was sufficient to convict deceased of contributory negligence as a matter of law. [Toeneboehn v. St. Louis-San Francisco Ry. Co., 298 S. W. 795.]

We think the nearness of these three tracks to each other and the fact that deceased stopped his car at a point very close to the limit he could go without placing himself in danger on the passing track and the fact that a train was switching to the west which may have attracted his attention, together with the few seconds and short space he had in which to act after he could have seen the train are such facts that made the question of his contributory negligence one for the jury. [Toeneboehn v. Railway, 298 S. W. 795; Norton v. Davis, 265 S. W. 107; Swigart v. Lusk, 196 Mo. App. 471, 192 S. W. 138; Roques v. Railroad, 264 S. W. 474; Jackson v. Railroad Company, 189 S. W. 381; Kenney v. Railroad, 105 Mo. 270, 15 S. W. 983, 16

826

S. W. 837; State v. Trimble, 254 S. W. 846; Smith v. Railroad, 282 S. W. 62; Weighman v. Railroad, 223 Mo. 699, 123 S. W. 38.]
The judgment should be affirmed  It is so ordered.
*Cox, P. J.*, and *Bradley, J.*, concur.