ST. PAUL, J.
Plaintiff claims damages for the death of his minor son, charging same to the negligence of the defendant telegraph company and of the Director General of Railroads (operating the Texas & Pacific Railroad), hereinafter designated for convenience the railway company. The cause of action against the railway company is wholly apart from that against the telegraph company, and will he passed upon separately.
I.
[1] The deceased was nearly, but not quite, 14 years of age, and we find the facts to be that on the night of December 20, 1919, he was in the employ of the telegraph company on his way to deliver a message; that he was run down on the tracks of the railway company, whilst riding a bicycle over a public crossing in the heart of a city of 17,000 inhabitants (to wit, Alexandria, La.); that the night was dark, the crossing unguarded and poorly lighted; that the train was backing without a light ahead to mark its presence, and without lookout preceding it to give warning of its approach; that the locomotive was several hundred feet to the rear, where the noise of its whistle, bell and exhaust could be no indication that the dark and silent “lead car” was in motion. This we hold to be gross negligence. See Maher v. L. R. & N. Co., 145 La. 733, 82 South. 872.
II.
[2] The defendant pleads contributory negligence. This is a matter of defense, and must be proved by defendant unless shown affirmatively by the very evidence relied upon by plaintiff. The theory that the boy attempted to cross between the cars before they started to move is not supported' by a scintilla of evidence; but, on the contrary, it *187 is negatived by the fact that the bicycle track led right upon the railroad track, and showed that the bicycle was struck aside and pushed along. This is corroborated by the further fact that the body (trunk) was found wholly between the rails (as testified to by the brakeman), thus showing that the unfortunate boy was crushed by the low-lying brakebeams, and dragged along without being touched by the forward wheels, and until in the course of his rolling some part of his hands and feet were caught beneath the wheels further back; all of which fully accounts for the lack of blood on the wheels ahead.
For the rest, we do. not know whether the boy looked or listened, or whether looking or listening would have done any good; but since the burden of proof as to contributory negligence is on defendant, it is a presumption of law that he did look and listen; and since the love of life is instinctive, especially in youth, it is also a presumption of fact that the boy gave some care to his own safety. Hence, since neither the evidence of the defendant nor that of plaintiff shows contributory negligence in the boy, no such contributory negligence will be presumed.
[3] As to the obligation to stop before ■crossing a railroad track, that must not be accepted so literally as to require a person upon approaching a railroad track to come at once to a position of absolute immobility; but common sense and common practice both indicate that it will suffice for such person to have his own motion so checked and under control that he may stop instantly if need be.
There is nothing in this record to indicate that the deceased approached this track otherwise than with his motion under full control. And the fact is that he unknowingly ran into a death trap where “two or three” men had been killed before.
The defense of contributory negligence is not sustained.
III.
[4] As to the telegraph company, the only negligence charged against it is that it employed the boy in night work, contrary to the provisions of statutes forbidding such employment of children under the age of 16 years, and denouncing penalties therefor. Act 301 of 1908; Act 133 of 1914; Act 177 of 1916.
The defense is that this defendant acted in good faith, upon representation made by the boy that he was more than 16 years old, and appeared to be so; and that in any event this employment was not the proximate cause of his death.
It may be that the good faith of the defendant is no excuse in such matters (Alexander v. Standard Oil Co., 140 La. 54, 68, 72 South. 806) ; but we find it unnecessary so to hold in this case. For we find here, as shown above, that between the alleged negligence of this defendant and the injury suffered by the boy, there supervened the culpable act of a third party for whom the defendant was not responsible, and hence the defendant’s alleged negligence was not the proximate cause of the injury.
We find it unnecessary to decide, and we do not decide in this case, whether the defendant would or would not be liable had the supervening act of the third person been nonculpable. That is left absolutely open. We mean here to decide only this: that since between the alleged negligence of this defendant and the alleged consequence thereof there did supervene the culpable act of a third person for whom this defendant was not liable, then it follows that the act of the other party, and not the alleged negligence of this defendant, was the proximate cause of the injury.
IV.
[5,6] The trial judge allowed $10,000. This we think was excessive. From a pecuniary standpoint the father was not damaged *189 at all by tbe death of this young boy, who was not assisting his father in any way, but, on the contrary, entirely dependent upon him. The measure of damages is the suffering of the boy, whose death does not seem to us to have been instantaneous, and whose sufferings, though short, must have been intense ; and likewise the loss of the boy’s companionship and the shock and sorrow to the father occasioned hy the awful death of his young son. We think the allowance should be reduced to $5,000.
[7] Of course a judgment against the Director General of Railroads is a judgment against the United States, and therefore bears no interest unless Congress shall allow therefor.
Decree.
The judgment appealed from is therefore reversed as to the Western Union Telegraph Company, and plaintiff’s demand as to that defendant is now rejected at his cost in both courts; and the judgment appealed from is amended as to the' Director General of Railroads, so as to reduce the amount allowed plaintiff from $10,000 to $5,000, but without interest (unless allowed by Congress). Plaintiff to pay the costs of this appeal, and the Director General to pay all other costs.