### ROSS v. MISSOURI PAC. R. CO.*
### No. 4651.

Court of Appeal of Louisiana. Second Circuit.
March 29, 1934.

See, also, 153 So. 574.

G. P. Bullis, of Vidalia, and L. A. Whittington, of Natchez, Miss., for appellant.

Dale, Dale & Dale, of Vidalia, and Hudson, Potts & Bernstein, of Monroe, for appellee.

DREW, Judge.

Plaintiff sued for damages to his automobile alleged to have been sustained as the result of a collision between the train of defendant company while switching in its yards in the town of Ferriday, and the automobile of plaintiff, driven at the time by plaintiff.

The crossing where the accident occurred is alleged on by plaintiff, as well as the alleged acts of negligence of defendant, in the following language of the petition:

"3. At the crossing of defendant's railroad with said highway No. 65, in said city of Ferriday, the railroad runs about north and south, and the highway runs about east and west, at the place of crossing. Defendant's railroad at this crossing consists of three tracks. The first of said tracks on the west side of the crossing is defendant's main line. On the west side of this main line track, about 50 feet from the main line, on the south edge of said highway No. 65, is a sign facing west bearing the words 'Louisiana Law Stop.' On the east side of said main line track, and on the north edge of said highway, is a similar sign, bearing the same words, located about 50 feet east of said main line, said sign facing east and bearing the lettering only on its east side, so that it is not visible to one approaching from the west. About 107 feet east of said main line track, said highway crosses a switch track owned and operated by defendant, about parallel to its main line, and 74 feet east of said switch track, said highway crosses a second switch track. There is no sign along the highway on either side of either of said switch tracks. Said tracks have existed as above described and have been owned and operated by defendant for more than one year prior to this date, and said

crossing is situated in the town of Ferriday, in Concordia Parish, State of Louisiana.

"4. On October 26, 1929, petitioner was driving his Ford automobile along said U. S. highway No. 65 going from the city of Natchez, Mississippi, to his home on Lake St. John, in said Concordia Parish, and arrived at said crossing after dark, about 8 P. M.

"5. Upon coming to said crossing, petitioner was traveling from the west toward the east, and therefore came to said main line track of defendant first. Petitioner stopped his car before going on said main line track, within 50 feet of said track, and looked and listened for approaching trains. At this point, there is nothing to obstruct the view northward along the said main line track or said switch tracks, and had it not been dark, petitioner could have seen northward along said main line and both switch tracks for a long distance. Petitioner then proceeded across said main line and stopped at said first switch track and looked and listened for approaching trains, but saw or heard none, and then proceeded.

"6. Just as petitioner had driven on said first switch track, a freight car, being the front end of a long train of freight cars, backed suddenly from the north out of the darkness and struck the side of petitioner's automobile.

"7. There was no light of any kind on the front end of said freight car, nor on any of said string of freight cars. The locomotive, owned and operated by defendant, pushing said string of cars, was headed north with no headlight or light of any kind on its southern end.

"8. There was no flagman, gates or lights of any kind at said crossing to warn automobiles of said approaching cars or stop them.

"9. No employee of defendant, nor any other person, gave any signal or displayed any light to warn petitioner of the impending danger at said crossing.

"10. The locomotive, owned and operated by defendant, pushing said string of cars, did not blow any whistle nor ring any bell, before pushing said cars across said crossing.

"11. Said string of cars made very little noise in approaching, because the locomotive was a considerable distance away and was not working hard to push said cars.

"12. Said string of cars was not in sight nor visible at any time after petitioner reached said crossing before petitioner had come onto said switch track.

"13. Petitioner is informed that a negro flagman employed by defendant was at said crossing prior to this accident. Petitioner did not see such a flagman and petitioner did not see any light or signal at said crossing. But if said flagman was present at said crossing, he was negligent in failing to station himself where he could give a signal to petitioner, and warn petitioner of the impending danger, and said flagman was negligent in failing to warn petitioner of said danger, and in failing to signal the engineer of the locomotive pushing said string of cars, to stop them when the danger was apparent because of automobiles approaching, and defendant's agents and employees were negligent in failing to stop said train before entering said crossing, if a flagman was at said crossing and saw automobiles approaching, and in failing to stop immediately when petitioner's car was struck.

"14. Said string of cars, upon striking petitioner's automobile, pushed it southward along the track about 85 feet. * * *

"19. Defendant was also negligent in requiring or permitting a method of operating its railroad at the time and place where the aforesaid damage was sustained, by pushing long strings of freight cars across a busy public highway after dark. Such a method of operation must and will result in frequent collisions with automobiles, and is an improper use of the highway crossing having due regard for the traffic by automobiles along and over said crossing. The rights and duties of defendant and the users of said public highway are reciprocal and mutual and neither has a right to use the crossing in such a way as to impair its use or safety in its use by another.

"20. The switch track on which said accident happened and the other switch tracks in the Ferriday yard of defendant, are double-ended, that is to say, they can be entered from the south end as well as from the north end, and it would be just as easy and efficient and far more safe for the traveling public using said highway crossing, for defendant at the time and place herein mentioned to have switched its said cars in and out of said switch tracks through the south end thereof, at which end there is no highway crossing, rather than at the north end where the aforesaid crossing exists. Defendant was guilty of negligence in failing to use the south end of said switch at the time herein complained of, instead of the north end, for thereby it could have avoided pushing said cars in the dark across a busy public highway.

"21. Even if defendant's said use of said switch track would have been safe before the advent of automobiles (which petitioner denies), yet at the time of accident, by reason of the constant traffic on improved public highways, especially the type of highways such as U. S. No. 65, the public interest now requires that travel along said highways be safe, speedy and economical, and this public interest requires a use of said crossing by defendant that gives recognition to the increased and growing traffic and use of said highways and said crossing by automobiles. It is therefore unreasonable, intolerable, and negligent for defendant to use its switch tracks at this crossing in the manner herein alleged, which use amounts to practically a monopoly of said crossing under existing conditions as aforesaid. Petitioner avers and charges that such use of the highway crossing, in view of the said conditions of public travel on said highway No. 65, is negligence per se on the part of defendant."

Defendant admitted the act occurred at the place alleged; that the automobile was pushed down the track about 70 feet after the accident; that no whistle was blown; that the accident occurred about 7:35 p. m.; that the switch track on which the accident occurred could be entered from the south as well as from the north; all other allegations of the petition are denied, and defendant further avers as follows:

"Defendant avers that at the time of the accident the switch engine, which was pushing the cars that had the collision with said automobile in which plaintiff was riding, was headed down the lead or first switch from the main track toward the yard in Ferriday, at a speed of about 5 miles per hour. Before the said automobile was struck, brakeman Jesse Summers, who at the time, standing at the line switch, saw Alex White flagging an automobile, and at once gave a signal to the engineer to stop. The engineer immediately applied the brakes and stopped as soon as possible. As the train pulled up the main line preparatory to coming down the lead, brakeman Alex White got off the cars at the highway crossing at the main line and walked over to the lead, where the highway crossed same, for the purpose of flagging the traffic at the crossing. He had the usual lighted lantern for such purpose.

"23. In coming down the lead switch toward Ferriday, just before said train reached same, there was an automobile approaching said crossing from the north, and two automobiles approaching same from the south.

"24. Brakeman Alex White, who was standing in said highway crossing with a lighted lantern, flagged these approaching automobiles, in an effort to stop them before they reached the said crossing, but without avail.

"25. The head automobile, of the two coming from the south, failed to stop, and said brakeman, Alex White, who was standing on said gravel crossing was compelled to get out of the way of the front automobile, to keep from being run over. This automobile also passed over the said crossing ahead of the train.

"26. The automobile in which plaintiff was riding was following the car that had just passed, and said Alex White, standing near the center of said crossing, flagged this automobile by swinging his lighted lantern back and forth, but said automobile failed to stop, and was struck by the train about midway the hood on same, and was carried along the track about 70 feet from said crossing. The engineer had been flagged, and immediately applied the brakes, and as soon as the train stopped, was signalled to back up off the automobile, which he did.

"27. Plaintiff, owner and driver of the automobile, in which he was driving either saw said Alex White flagging his automobile or else he was not looking.

"28. Defendant avers that it and its employees were wholly without fault in the premises; that it was guilty of no neglect of duty, and was not responsible in any way for the accident; and that the proximate or efficient cause of the accident was the gross negligence, reckless conduct and total lack of the exercise of precaution on the part of plaintiff.

"29. Now averring in the alternative, defendant alleges that in the event it should be held to some degree of fault, and plaintiff, on account of the facts alleged in paragraph 28 of plaintiff's petition, was guilty of contributory negligence."

On these issues the case was tried below and resulted in judgment rejecting the demand of plaintiff. From this judgment, he has appealed.

The tracks of the defendant railroad company at the place of the accident run north and south, and the highway crossing same runs east and west. Plaintiff was traveling east and the train was traveling south. There are three tracks to be crossed at this point. On the west side is the main line, then 73 feet east there is a switch track known as the "lead" track, and far-

ther east is another side or switch track. There is a stop sign on each side of the main line track. There are no stop signs on either side of the other two tracks. The accident occurred on the center or lead track. It occurred at night and, although the weather was clear, the night was very dark. The allegation of the petition that it was negligence for defendant to switch the cars from the north end of the yard instead of the south end is apparently abandoned, as it is not urged here. However, this allegation of negligence is without merit, as the evidence clearly shows that, regardless of which end of the yard was used to switch cars, they would have to be pushed across this same crossing, and whether they were pushed from the south or north would not have made any appreciable difference. To have switched them in any other manner except the way they were switched would have been impracticable and very inconvenient for defendant, and would not have lessened the danger to plaintiff in any degree.

At the time of the accident, the train crew consisted of an engineer, fireman, conductor, and two brakemen. The cars in the yard were being switched for the purpose of making up a freight train. The conductor was some distance away from the train at the time of the accident, and was engaged in greasing cars. The engineer and fireman were at their places of duty. One brakeman was at the crossing where the accident occurred, and the other brakeman was about twelve car lengths from the crossing toward the engine and out to one side of the train some distance, at a place where he could transmit or relay the signals given by the brakeman at the crossing to the engineer and fireman. This was necessary because the engineer and fireman could not see the crossing, due to a curve in the track. At the time the engine was pushing 22 box cars of an average length of 52 feet each. The rate of speed was from 6 to 8 miles per hour. The whistle was not blown, but the bell was ringing. It is not shown that any one near the crossing heard the bell or that it could be heard for so great a distance, which was nearly 1,000 feet. We are also impressed with the fact that the blowing of the whistle would have been to no avail as a warning to plaintiff, who was attempting to cross the track, and would possibly have conveyed the idea to him that the train was far enough away to give him sufficient time to cross ahead of it. Especially is this true due to the fact, shown by the evidence, that the slowly moving cars, making

very little noise, could not be seen until one was within 20 feet of them, on account of the unusual darkness of the night. The brakeman was at the crossing with a lantern which gave a white or ordinary light, and was attempting, by waving his lantern, to stop traffic. There was no light on the front car. An automobilist, coming from the east, heeded the warning and stopped, although he did not see the cars. An automobile driven by a Mr. Jones, immediately ahead of plaintiff, did not heed the warning, but speeded across the track, causing the brakeman to jump out of the way to keep from being run over. He barely made it across the track. Plaintiff followed close behind him, and was struck by the train and his automobile pushed about 70 feet down the track before the train was stopped. The fact that the signal given by the brakeman at the crossing immediately after the collision had to be relayed by the second brakeman and then acted upon by the engineer causes us to conclude that the train was stopped as soon as possible after the collision.

The driver of the car just ahead of plaintiff testified that, when he reached the track, he then saw the moving train only about 20 feet away. We conclude that the question of negligence on the part of defendant evolves itself into the question of whether or not the crossing was properly protected by it. If it was, the failure to sound the whistle and to have a light on the front car goes out of the case.

The lower court, after holding that, regardless of defendant's negligence, if any, plaintiff was guilty of contributory negligence in that he did not stop, look, and listen before he attempted to cross the track where the accident occurred, said: "I am also of the opinion that the evidence preponderates in favor of defendant's contention that this crossing, at the time of the accident, was protected by its brakeman, Alex White, who was waving a lighted lantern. The testimony of Mr. Orr, a wholly disinterested witness, convinces us of this fact, and his testimony is supported by that of other witnesses in the case."

We agree with the lower court in its finding of fact, and find that, by so protecting this crossing, the defendant has freed itself of any negligence, and that the accident was caused by the negligence of plaintiff in not seeing the lighted lantern, or, if he saw it, in not stopping his car.

Plaintiff contends that he stopped, looked, and listened before attempting to cross the lead track where the accident occurred. We

are sure he is mistaken in that respect, for, if he had stopped, even for a short time, the cars would have been across the crossing, and he would have run into the side of a car.

Having found that the crossing was properly protected by a brakeman waving a lantern, we conclude that there was no negligence on the part of defendant, and therefore the demands of plaintiff were correctly rejected by the lower court, and the judgment is affirmed, with costs.

TALIAFERRO, J., recused.