ROBERTSON et al. v. MISSOURI PAC.
R. CO.*

No. 1551.

Court of Appeal of Louisiana. First Circuit.
Jan. 28, 1936.

McCoy, King & Jones, of Lake Charles, for appellants.

Hudson Potts & Bernstein, of Monroe, and E. R. Kaufman, of Lake Charles, for appellee.

OTT, Judge.

The suit is for damages in the sum of $3,000, which plaintiffs, Mrs. Nettie Robertson and her husband, claim to have sustained by reason of a collision at a railroad crossing in the city of Lake Charles on the 5th day of January, 1934, at about 6:30 p. m., in which collision a Dodge car driven by Mrs. Robertson was run into at the street crossing by a train of the defendant railroad company while the train was being backed across the street. Mrs. Robertson claims $600 damages for the destruction of the car, which she alleges was her separate property, and $2,000 for personal injuries, while her husband claims damages in the sum of $400 for loss of the services of his wife on account of the injury.

Defendant filed an exception of no cause or right of action, which was sustained. Plaintiffs have appealed.

*Rehearing denied 167 So. 165.

In so far as the allegations of the petition are pertinent to the exception, they may be summarized as follows: That plaintiff, Mrs. Nettie Robertson, on the date stated, was driving eastward on Broad street in her said car; that it was so cloudy and dark that she could not see an object approaching from the right or left outside the glare of her headlights; that she approached the crossing of said railroad over said street in a cautious manner and at a rate of speed of about ten to twelve miles per hour; that her lights were burning and she was observing the right of way carefully for any obstructions thereon, and looked both north and south before attempting to cross the track, but was unable to see or hear any train approaching.

She further alleges that a switching crew of the railroad was backing up a train of cars across the street, and the lead car of the train, while thus backing up, ran into her automobile while the front wheels of her automobile were about across the track, demolishing her car and causing her physical injuries.

Plaintiffs charge the defendant railroad with negligence and responsibility for the accident in the following particulars: that the train crew operating said train was violating a rule of the railroad in failing to protect the crossing by stationing a member of the crew at the crossing to signal approaching motorists, in the absence of any flagmen or any automatic signaling device; that the members of the crew saw the car of plaintiff approaching the crossing in ample time to stop the train before striking the automobile, but failed and neglected to do so.

■ (1) It is negligence for a railroad company to back a train of cars across a street crossing at night in a populous city without any lights or signals on the lead car, or without a switchman, flagman, or other warning device stationed at the crossing, to warn those approaching the crossing of the danger. Maher v. Louisiana Railway & Navigation Co., 145 La. 733, 82 So. 872; Aymond v. Western Union Tel. Co. et al., 151 La. 184, 91 So. 671; Draiss v. Payne, 158 La. 652, 104 So. 487.

■ Therefore, if we assume as true, as we must for the purpose of the exception, the allegations of the petition that the train crew of defendant in backing these cars across the street after dark without placing some one there to signal traffic, was violating a rule of the company, and if we further assume as true that there were no automatic signaling devices stationed at this crossing by the defendant railroad, it follows that plaintiffs have sufficiently charged the railroad with negligence to set forth a cause of action.

(2) However, we gather from the briefs filed in the case that the exception was sustained principally on the ground that the plaintiff, Mrs. Robertson, shows by the petition that she was guilty of such contributory negligence as to preclude a recovery in that she does not allege that, before attempting to cross the railroad track, she stopped, looked, and listened as she is required to do under the law. She avers that she approached the crossing cautiously and at a rate of speed of about ten to twelve miles per hour; that she looked in both directions, north and south, before crossing the track; that she could not see any train approaching; that she was observing the right of way carefully to ascertain if there were any obstructions thereon. These allegations must be taken as true for the purpose of the exception.

■ The question of whether or not a motorist, before crossing a railroad track, should first stop, in addition to looking and listening, has given rise to much diversity of opinion in the courts of the several states. Blashfield, Cyclopedia of Automobile Law and Practise, vol. 3, p. 123, par. 1742 et seq. The rule prevailing in a majority of the states, including Louisiana, is that the driver is not required to come to a complete stop before crossing, provided he has his car under such control as to be able to stop immediately, and provided, also, that he has exercised due care in looking and listening for an approaching train.

Some confusion has arisen on this point, in this state as well as the other states and the federal courts, because of an effort to apply a standard of conduct for the driver on such occasions as set forth in the case of B. & O. R. R. Co. v. Goodman, 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167, 56 A.L.R. 645, where an expression was made by the United States Supreme Court to the effect that if stopping, looking, and listening could not be made effective, it was the duty of the driver to get out and reconnoiter. But this expression was clarified and limited in the recent case of Pokora v. Wabash R. Co., 292 U.S. 98,

54 S.Ct. 580, 78 L.Ed. 1149, 91 A.L.R. 1049, where the United States Supreme Court appears to approve the rule prevailing in most jurisdictions to the effect that the traveler must look and listen before crossing, but is not required to come to a complete stop unless the circumstances require such precaution. Whether or not the circumstances require the driver to stop in addition to looking and listening is said to be a matter for the jury.

A review of a few of the pertinent cases in this state shows a similar rule. We quote the following pertinent expression on this point by the Supreme Court of this state in the case of Aymond v. Western Union Tel. Co. et al., 151 La. 184, at page 187, 91 So. 671, 672: "As to the obligation to stop before crossing a railroad track, that must not be accepted so literally as to require a person upon approaching a railroad track to come at once to a position of absolute immobility; but common sense and common practice both indicate that it will suffice for such person to have his own motion so checked and under control that he may stop instantly if need be."

And in the case of Draiss v. Payne, Agent, 158 La. 652, 104 So. 487, 489, the plaintiff was driving at a speed of thirteen or fourteen miles per hour in approaching the crossing where a train was backing up without lights, signals, or other warnings, and the failure of the plaintiff to stop was set up as contributory negligence, the court said: "It is inconceivable that if the bell had been rung, or the whistle of the tail hose had been sounded, before passing over the crossing, or if a red light had been displayed in the rear of the coach backing in, the occupants of the car, who were near the crossing, should have failed to see or hear any of these signals. The wind shield had been wiped off, and their view ahead was undimmed by the rain. This is a fact made plain by the testimony of plaintiff's witnesses. The crossing was approached at a rate of speed of 13 or 14 miles per hour. This was not excessive, and the auto, under ordinary circumstances would have been under complete control and readily stopped."

In those cases where the plea of contributory negligence of the driver of the car in cases of this kind was sustained, it will be seen from an examination of the cases that the failure to come to a stop, before making the crossing, was not the only reason for holding the plaintiff guilty of contributory negligence. For instance, in the case of Pearce v. Missouri Pacific R. R. Co. (La.App.) 143 So. 547, 549, the contributory negligence of the plaintiff was found to consist, under the particular facts of that case, in his failure to stop and also his failure to properly look and listen. We said in that case that the plaintiff ventured across the track "without listening, without looking effectively, and certainly without stopping."

To the same effect was the decision in the case of Noel v. New Iberia & N. R. Co. (La.App.) 145 So. 377, 379, where plaintiff did stop, but did not effectively look and listen before crossing. We there said in passing on the plea of contributory negligence: "The inescapable conclusion is that plaintiff did not look in the direction the train was coming as he passed the cane patch, but looked only when the train was practically coming upon him, at a time when looking was not 'effective' and too late to avoid the collision."

In the case of Ross v. Mo. Pacific R. Co. (La.App.) 153 So. 570, the plaintiff was held guilty of contributory negligence for failure to heed the warning of a brakeman stationed at the crossing to warn approaching motorists. Likewise in the case of Young v. La. Western R. Co., 153 La. 129, 95 So. 511, the plaintiff was denied recovery for failure to stop, look, and listen where this could have been done effectively, as he had some thirty-six feet of unobstructed view before him.

It is unnecessary to burden the record with other cases in this connection as these suffice to illustrate the point under discussion.

█ Moreover, we find running through all the cases the rule that, in order for plaintiff to be barred from recovery on account of contributory negligence for failure to stop, it must appear, first, that by stopping he could have avoided the accident; and, second, as a corollary to the first proposition, the failure to stop must be the proximate cause of the accident. See Holstead v. V., S. & P. Ry. Co., 154 La. 1097, 98 So. 679.

█ Applying this rule to the present case, it appears from the petition that Mrs. Robertson, the driver of the car, was looking and listening, and driving cautiously, but on account of the darkness she could not see beyond the glare of her headlights. Had she come to a complete stop, it does not appear that she could have seen or

heard the approaching train any better than she did hear or see it. There was no light on the lead car of the backing train, no other signals by which it can be reasonably inferred that she would have been able to see or hear this train backing up more or less noiselessly, nay, perhaps, stealthily, in the darkness of the night without lights or warning. We are not prepared to hold under these circumstances that her failure to stop was the sole and proximate cause of the accident.

(3) Reference is made to the law regulating traffic on the highways, rule 17, § 3, tit. 2, Act No. 21 of 1932, as strengthening the rule requiring a motorist to stop, look, and listen before attempting to cross a railroad track at a crossing and placing responsibility on him for the failure to do so. Our opinion is that this rule of traffic is only expressive of the law as it has heretofore existed. This law was passed in the light of the decisions of the courts of this state, as well as of other states, and it must be assumed that there was no intention to change the interpretation of the law on this point unless the Legislature clearly intended to change that interpretation, which we do not find to be the case. Whether the driver of the car in the present case, on being unable to see or hear the approaching train, exercised that care and caution in driving onto the crossing to absolve her from responsibility as contemplated by this rule of the road, is a question of fact for the court or jury to determine on the trial of the case.

(4) In article 10 of their petition, plaintiffs aver that the train crew saw Mrs. Robertson's car in ample time to stop the train before striking her car, and this failure to stop the train was the sole and proximate cause of the accident. This appears to be contradictory to other allegations of the petition assigning other and further grounds of negligence on the part of the train crew as the cause of the accident. However, in view of the fact that in the next article of the petition, plaintiffs reiterate as the cause of the accident the other alleged grounds of negligence of the defendant, we do not think the allegation in article 10 has the effect of destroying the other allegations of negligence. If there is inconsistency in setting forth the cause of action, it might give grounds for a motion to elect, but certainly would not have the effect of emasculating the petition to the extent of destroying the cause of action set forth in any part of the petition.

(5) Plaintiffs pray for the citation of defendant, for judgment, and for general relief, but do not specifically pray for judgment against defendant. In view of the allegations in the petition and the prayer for citation of defendant, for judgment and for general relief, we think the prayer sufficient to form the basis of such judgment as the allegations and facts of the case may justify.

For the reasons assigned, the judgment of the lower court in sustaining the exception of no cause of action is reversed, and the case remanded for trial; cost of the appeal to be paid by appellee, and the cost of the lower court to await the judgment of the lower court.