**BOYKIN v. PLAUCHE et al.***

No. 1619.

Court of Appeal of Louisiana. First Circuit.

June 9, 1936.

McCoy, King & Jones, of Lake Charles, for appellant.

Clement M. Moss and Vance Plauche, both of Lake Charles, for appellees.

LE BLANC, Judge.

Charles E. Boykin, Jr., son of Mrs. Anna Boykin, died on June 23, 1935, as a result of injuries sustained on the afternoon of the day previous in an automobile accident when the car which he was driving collided with another car belonging to Mrs. Thomas C. Plauche and being driven by James Price, on the highway leading south from the city of Lake Charles and known as South Street road, at a point where that road is intersected by a road known as Prien Lake road. His mother, the plaintiff herein, has instituted this suit to recover damages for his death and for other damages resulting from the accident, claiming that it occurred solely by reason of the negligence of the driver of the Plauche car. Her demand is for the sum of $25,930, made up of the following items:

| | |
|---|---:|
| Medical services to her son | $ 100.00 |
| Hospital service | 20.00 |
| Nursing | 10.00 |
| Funeral and burial expenses | 550.00 |
| Damage to her automobile | 250.00 |
| Loss of companionship, love and affection of her son | 10,000.00 |
| Sorrow and mental anguish | 5,000.00 |
| Loss of support which her deceased son would have contributed | 10,000.00 |
| | $25,930.00 |

She impleaded as parties defendant Mrs. Thomas C. Plauche, owner of the car which she claims ran into hers, and also her minor son Thomas Joseph Plauche who she alleges was in the car and aided and abetted in the driver's negligence; James J. Price, father of James Price, minor, and James Price also, who, she avers, was driving the car with the knowledge, consent, and permission of the owner, Mrs. Thomas C. Plauche, and the Royal Indemnity Company which carried liability insurance on Mrs. Plauche's car to the extent of $10,000 for the death of one person and of $5,000 for the destruction or loss of use of property.

South Street road runs north and south and Prien Lake road east and west. In her petition plaintiff alleges that on the afternoon of the accident, her deceased son was driving her Chevrolet sedan automobile northward on South Street road at a speed of between 20 and 25 miles per hour, holding to his right-hand side of the road, and with that degree of care and caution required of ordinarily prudent persons op-

---

*Decree amended on refusal of rehearing, see 169 So. 131.

erating a car as it approaches an intersection. That as he entered the intersection of Prien Lake road. in the careful manner described, the Ford V-8 automobile of the defendant, Mrs. Thomas C. Plauche, being driven at the time by the minor, James Price, son of James J. Price, was approaching from the west on Prien Lake road and entered the said intersection at a dangerous and reckless rate of speed in excess of 70 miles per hour and in a careless and negligent manner and in wanton and willful disregard of the rights of her deceased son and of others using the said highway. She alleges that notwithstanding the fact that the driver of the Plauche car had a clear and unimpaired vision of South Street road on his right and must or should have seen her son coming into the intersection, he never slackened his speed or slowed down for the intersection, but continued across the same and ran into her car, striking it at a point on the hood right in front of the driver's seat with terrific force, the impact being so violent that the Ford car was thrown in the air a height of ten feet, turned over twice and reversed its direction, finally landing in a ditch on the north side of Prien Lake road, about 25 feet from the intersection. The force of the impact, she alleges, drove her Chevrolet sedan into the ditch, and it came to rest, pointing northeast, about 40 feet from the intersection, east of the location of the Ford car. She alleges in detail the injuries received by her son, who was at the driver's wheel, and from which he died eight hours after.

Negligence is charged against Price, the driver, and Thomas Plauche, who is said to have abetted in the operation of the Plauche car, in the following particulars:

1. In operating an automobile on the public highway in excess of 70 miles per hour in violation of the laws of the state of Louisiana.

2. In operating an automobile at a rate of speed so excessive as to completely lose control of the same.

3. In failing to see the automobile driven by the deceased entering the intersection at a time which made it mandatory to apply the brakes for the purpose of bringing it to a stop.

4. In failing to regard the rights of the deceased to complete the intersection, he having entered it first and therefore preempted the right of way.

5. In failing to reduce the speed of the automobile when entering a narrow and less used road into its intersection with the wider road which is a principal thoroughfare and therefore the favored or right of way road.

6. In failing to give any warning of approach by sounding of a horn or other device.

7. In driving the automobile into that of the deceased while it was on the extreme east or its right-hand side of the intersection.

The defendants filed a joint answer in which all the charges of negligence contained in the plaintiff's petition are denied, and it is specifically averred, on the contrary, that the accident was caused solely and only because of the negligence of the deceased in the following respects:

1. In driving his automobile in the intersection after the Ford car had already entered it before him.

2. In failing to sufficiently retard the speed of his car or stop it in order to avoid a collision.

3. In driving his automobile without maintaining a proper lookout for cars approaching the intersection and which might enter the same before him.

4. In failing to have his car under proper control.

5. In failing to have proper and sufficient brakes on his automobile and in failing to apply the same to enable him to stop in the event another car entered the intersection and passed in front of him.

6. In failing to see the Ford car enter the intersection ahead of him in order to enable him to respect the right of way which it had thus pre-empted.

In the alternative, defendants plead that in the event the driver or operator of the Ford car was found to have been at fault then the deceased was guilty of contributory negligence in the various acts of commission or omission just enumerated and charged against him.

On the issues as thus made up by the pleadings, the case went to trial resulting in a judgment in favor of the defendants and dismissing the plaintiff's suit at her

costs. Without asking for a new trial, the plaintiff appealed.

The learned district judge held that young Price, the driver of the Plauche car, was guilty of gross negligence in many of the particulars charged against him, but he was of the opinion that plaintiff's son was also negligent in having entered and attempted to cross the intersection in the face of the obvious danger presented by the fast approach and reckless driving of the other car, which danger he must have or should have apprehended in time to take steps for his own safety, and that, consequently his own negligence barred recovery on the part of his mother.

We have no difficulty in reaching the same conclusion as did the district judge on the question of the negligence of the driver of the Plauche car. In fact, young Price practically confessed his own negligence a few minutes after the accident when he made the following statement: "I don't know where the other car came from—I don't know how fast I was going, and I had better go and tell daddy." That statement was made in the presence of Miss Levone Jones who with a companion had hurried to the scene of the accident to render assistance, and Price admits having made it.

Several witnesses testified as to the excessive speed of the Plauche car as it neared the intersection, and from their various estimates, we think it safe, as did the district judge, to say that he was traveling at a rate of 60 miles per hour. Mrs. O. A. Hildebrandt was driving south on South Street road and therefore approaching the intersection from the opposite direction in which young Boykin was. She says that she was within a block of the intersection when her attention was attracted by the Plauche car coming from the east on Prien Lake road. Her estimate is that at the time it was going between 50 and 60 miles per hour. Mrs. Gray Yoakum, her sister, was in the car with Mrs. Hildebrandt and also observed the Plauche car, which she states was coming at about 50 miles per hour. About that time, she says, a Willis car passed ahead of the car she was in, and her first thought was that there would be a wreck between the Willis and the Ford (the Plauche car) because the Ford "was coming so fast." Mr. W. T. Butts who was driving his car on the Prien Lake road that afternoon testifies that the

Plauche car passed him about a mile from the intersection going at a speed which he states was between 60 and 70 miles per hour. He estimates that when the car had about reached the intersection he was perhaps a quarter of a mile behind it and never noticed that it had slackened its speed.

As against this testimony, the defendants offered that of Price, the driver of the car, and of young Plauche, both of whom state that as they approached the intersection they were making about 35 miles. There were two young ladies in the car with them, but they both say that they know nothing about the speed at which they were going. In fact their testimony concerning the whole accident is of the most negative character. Considered in connection with the statement he admits having made following the accident, Price's testimony as to the speed of the car is of practically no value in helping to solve this point. That leaves us with the testimony of young Plauche alone to contradict not only that of three disinterested witnesses for the plaintiff, but the physical facts resulting from the force of the impact between the two cars which can leave no doubt but that the Ford was traveling at a terrific rate of speed. On this point then, the driver of the defendant's car stands convicted of gross carelessness and negligence.

The testimony is also convincing on the point of the negligence of Price, the driver of the Plauche car, in entering the intersection from the less favored street after the Boykin car was well on its way across, at an excessive rate of speed and without control, and without also having taken the necessary precaution of looking for other cars which may likewise have been entering or approaching.

In passing on this point it becomes of importance to consider the nature of the intersection, the point where the impact took place and the relative positions of the two cars and the speed of each as they approached it.

Whilst we do not find that South Street road enjoys a superior right of way by virtue of any specific law or ordinance over Prien Lake road, it is a well-recognized and admitted fact that it is a main thoroughfare and is considered one of the principal highways leading out of the city of Lake Charles, to the south. Lake Prien

road, on the other hand is more or less of local importance and does not handle near the amount of traffic that does South Street road. By actual measurement, the traveled portion of South Street road is 8 feet wider than Prien Lake road, the former being 43 feet wide and the latter 35 feet. With these facts before us, and considering the relative importance of the two roads, we believe, therefore, that it can safely be stated that Prien Lake road was the less favored of the two, and that South Street road enjoys the right of way over it.

The Boykin car, it appears from what testimony there is in the record, was not traveling faster than 25 miles per hour, on the east side, which was the proper side, of the favored street. The Plauche car, on the other hand, was on the less favored street, coming at 60 miles an hour, and traveling in the center instead of south side of the street, where it should have been. We think that the testimony of Mrs. Hildebrandt and of Mrs. Yoakum fairly well establishes the fact that they saw the Boykin car enter the intersection first. But aside from their testimony, the point of impact which is established by the testimony of expert automobile mechanics on each side as being a few feet northeast of the center of the intersection, considered in connection with the relative speed of the two cars, leaves but little doubt that Boykin was the first to enter and for that reason, even though the street he was on did not enjoy the right of way over the other by virtue of any specific law, he had otherwise pre-empted the intersection, and it became the duty of the driver of the other car to respect his rights thereunder.

Evidently Price did not look and did not "see anything" as he admits, for if he had he would have stopped his car unless it was going too fast for him to do so, or otherwise he would have tried to veer it to his right in order to try and pass behind the Boykin car, unless he had lost control altogether. From a careful reading of their testimony, it seems that he as well as the other occupants of the car had lost all sense of appreciation of the situation and the impending peril. At any rate, neither he nor they took any step at all to try to avoid an accident, and on this ground too, he stands convicted of gross negligence.

Enough has been said, we believe, to show that we are as convinced as was the district judge, of the gross negligence and carelessness of the driver of the Plauche car to fix liability on the defendants, unless it be, as held by the court below, that young Boykin himself was guilty of contributory negligence. On this issue, we find ourselves unable to agree with the learned trial judge.

We enter upon a discussion of this point with the thought in mind first, that the plea of contributory negligence being a special plea, the burden of sustaining it lies on the one who has availed himself of it. With this as an accepted proposition of law in this case, the defendants who had pleaded contributory negligence on the part of young Boykin in the various particulars set out in their answer, assumed the burden of proving any or all of them by a fair preponderance of testimony. We do not think they have proven any one of them.

The learned district judge, as we have already stated, seemed to have been of the opinion that Boykin either saw, or was bound to have seen, the fast approaching Ford car coming on heedlessly into the intersection without slackening its speed, at a point where it was then too near for him to safely venture across, and that when he nevertheless attempted to go across, he was guilty of negligence which contributed to his death. To support his finding of that distance on which his decision on this point must necessarily rest, the district judge assumed certain facts which we do not think are borne out by the record. He would place the Plauche car at a distance of 27 feet from the west edge of the intersection at the moment when Boykin was entering it from the south. But to reach this figure, he has to place the point of impact between the two cars at a certain, definite spot in the intersection, and he has to assume that the two cars were traveling each at a certain given speed per mile at that exact moment. We believe that this is indulging a bit too much in speculation in order to sustain a plea of contributory negligence against a person who was killed in an automobile accident when the law itself requires that such a plea be supported by the same degree of legal certainty by which a plaintiff has to make out of his case against a defendant. A miscalculation of time only, by say a half of a second one way, would have placed the Plauche car, at the speed it was going, 44 feet further east than the point the

district judge places it west of the intersection. In that event, it would have been 17 feet inside the intersection when the Boykin car was just entering and without doubt would have cleared the whole intersection ahead of the Boykin car. On the other hand, the same miscalculation the other way, would have placed the Plauche car 44 feet further west than the point determined by district judge, in which event it would have been 71 feet west of the intersection at the moment Boykin was entering, and, since it is shown that South Street road is 43 feet wide and that the impact took place east of the center line of that road, the Plauche car would have been 92 feet from the point of impact even after the Boykin car was well 'within the intersection. At that distance from him, or even a shorter one for that matter, young Boykin, being on the right of way street and having entered the intersection first, might well have anticipated that the driver of the Plauche car would respect his superior rights and bring his car under such control as to avoid running into him. That is the ground on which we prefer to rest our decision in passing on the plea of contributory negligence in this case. The rule that the driver on the right of way street who enters the intersection first has the right to assume that a driver approaching the same intersection from the left will recognize and respect his rights is one that is well recognized by all text-writers on automobile law, and has been frequently applied by the courts of this state in disposing of pleas of the nature of that here under consideration. To cite the latest decisions of the three Courts of Appeal we mention the cases of Blitz v. Munson (Orleans Court of Appeal) 159 So. 754; Mills v. Moore (Second Circuit Court of Appeal) 166 So. 169, and Roy v. Yarbrough, 167 So. 883, a decision of this court rendered only a month ago and not yet reported [in State report].

■ To hold young Boykin negligent we would not only have to deny him the right to have assumed that the driver of the Plauche car would respect his superior privileges by virtue of being on the right of way street and of having pre-empted the intersection, but we would also have to hold that he heedlessly entered the intersection without having looked at all for traffic that might have been approaching from either side. Of course his version of how the accident happened was never given because he died eight hours thereafter without even having regained consciousness. None of the occupants of the other car testified whether he looked or not. So, to hold that he did not look we would have to resort to the presumption that is sometimes invoked in cases of this kind, that one is held to have seen what he should have seen. But if we are to indulge in matters of this kind, there is another presumption also recognized by our courts which comes to mind at this time, and which may with good reason be applied in this case. It is to the effect that the instinct of self-preservation, especially in a young man, is so natural that the law presumes that he will give some care to his own safety when confronted with a stituation of danger. In the case of Aymond v. Western Union Telegraph Co., 151 La. 184, 91 So. 671, 672, in discussing and passing on a plea of contributory negligence urged against a boy 14 years old who had been killed in a railroad accident, the Supreme Court said: "For the rest, we do not know whether the boy looked or listened, or whether looking or listening would have done any good; but since the burden of proof as to contributory negligence is on defendant, it is a presumption of law that he did look and listen; and since the love of life is instinctive, especially in youth, it is also a presumption of fact that the boy gave some care to his own safety. Hence, since neither the evidence of the defendant nor that of plaintiff shows contributory negligence in the boy, no such contributory negligence will be presumed."

It is significant to note that this same rule was used and applied by the learned district judge in an automobile accident case decided by him in 1930, and in which his opinion was adopted as the opinion of this court, on appeal. We refer to the case of Kern v. Knight, 13 La.App. 194, 127 So. 133, 136. The party killed in that accident was a married man, the father of four minor children. In disposing of the defendants' contention, on a plea of contributory negligence, that since there was no reason why the deceased could not have seen the car which ran into him, it must be presumed that he saw it and was negligent, the district judge said, as quoted by the opinion handed down by this court: "Since the burden of showing contributory negligence is on the defendants, the law

presumes the instinct of self-preservation in the deceased caused him to look and listen, and to exercise due care under the circumstances, a rule absolutely in contravention of the one contended for by the defendants. Aymond v. Western Union Tel. Co. 151 La. 184, 91 So. 671."

Applied, as it can be, with equal force in the present case, that language, it seems to us, is sufficient to solve the issue of contributory negligence against the defendants.

We are convinced from a careful consideration of the record that the proximate cause of the death of plaintiff's son was not the failure on his part to have taken any precautions for his own safety, but rather the gross carelessness and negligence of the young man, James Price, in approaching this important highway and entering the intersection at a reckless and excessive rate of speed, driving the car he was in, in the center instead of on his right-hand side of the road, and in not having it under proper control so as to pass behind the Boykin car, as he had lots of space to do so had he been keeping a proper lookout even considering the speed at which he was going. For his negligence, the defendants are held liable, as they have urged no special defenses save the plea of contributory negligence which we have held cannot avail them.

The plaintiff has made proper proof of all the actual damages she claims with the exception of two items. One of these is the claim for $100 for other expenses in connection with the burial of her son besides the bill of Burke & Trotti, undertakers in charge. We find no proof at all concerning this claim. The other item on which she has not made full proof of the amount claimed is that for the loss of her automobile. She claims $250, but we think that in line with the testimony of her own witness, Mr. Leland Doolan, who is engaged in the automobile repair business, an award of $200 would represent its full value. The other items for doctor's, hospital, and nursing services, amounting to $130, have been fully proven as well as the bill of the undertakers, which was for the sum of $450. For the actual damages sustained, therefore, she is entitled to and will be awarded judgment in the sum of $780.

This leaves us now for consideration her claims for loss of love and companionship of her deceased son, her sorrow and mental anguish and the loss of support which she claims he would have contributed to her as his mother.

That young Boykin was an exceptionally brilliant young man is admitted. He had achieved quite a distinction as a student in journalism and as a writer. He had won a money prize offered by a leading magazine of the country in an essay contest and several witnesses of evident literary attainments testified that he had a most promising career in that field of work. However, he was still attending the School of Journalism at the University of Missouri, and except for the cash prize he had won in the magazine essay contest referred to, and a few months' work in 1929 and 1930 with the Rycade Oil Company, had never earned any money. During the time he worked with the Rycade Company he received a monthly salary of $225 and gave it all save $25 to his mother. We have to consider then that here we had a young man, on the one hand, splendidly equipped mentally and with every prospect of success, and on the other hand with hardly any actual working experience. That he would have contributed to his mother's care and support is indicated by his devotion to her in turning over his earnings when he did work for the few months mentioned. Then there was the chance also that he might have married and contracted other obligations of support. All of these considerations make it hard indeed to fix any definite amount on this claim for loss of aid which he might have contributed to his mother's support in the future. The award to parents in cases of the death of a minor child ranges between $4,000 and $6,000. In this case the death of her son meant more than the loss of a young child to this mother, as he was more than twenty-three years old and was really the only one she could look to for support, she being legally separated from her husband. Because of the different elements which enter into consideration in fixing all the damages claimed, we have decided to lump all items of loss of love and companionship and of support, and for sorrow and mental anguish, into one, and will award for all, the sum of $9000. Adding to this the actual damages amounting to $780, plaintiff is therefore entitled to judgment in the sum of $9,780, with legal interest from date of judicial demand.

For the reasons stated, it is therefore ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, reversed, annulled, and set aside, and it is further ordered that there be judgment in favor of the plaintiff, Mrs. Anna Boykin, and against the defendants Mrs. Thomas C. Plauche, individually and as natural tutrix of her minor son, Thomas Joseph Plauche; James J. Price, individually and as natural tutor of his minor son, James Price; and the Royal Indemnity Company, in solido, in the sum of $9,780, with legal interest from date of judicial demand, together with all costs of this proceeding.